20 F.3d 1437
 73 A.F.T.R.2d 94-1721, 62 USLW 2635
 UNITED STATES of America, Plaintiff-Appellee, Cross-Appellant,
v.
Thomas C. HYNES, Assessor of Cook County, Illinois, Edward
J. Rosewell, County Treasurer and Ex Officio County
Collector of Cook County, and the County of Cook, Illinois,
Defendants-Appellants, Cross-Appellees.
 Nos. 91-3400, 91-3478.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 9, 1992.
Reargued En Banc Feb. 8, 1994.
Decided April 5, 1994.
 
 Eileen M. Marutzky, Asst. U.S. Atty., James B. Burns, Office of U.S. Atty., Crim. Div., Chicago, IL, Gary R. Allen, David E. Carmack, Dept. of Justice, Tax Div., Appellate Section, David M. Katinsky, Shirley D. Peterson, Dept. of Justice, Antitrust Div., John J. McCarthy (argued), David M. Katinsky, Edward J. Snyder, Dept. of Justice, Tax Div., Richard A. Correa, Dept. of Justice, Tax Div., Appellate Section, Washington, DC, for plaintiff-appellee.
 Karen Dimond, Office of State's Atty. of Cook County, Mark R. Davis (argued), O'Keefe, Ashenden, Lyons & Ward, Chicago, IL, for defendants-appellants.
 Before POSNER, Chief Judge, and FAIRCHILD, CUMMINGS, BAUER, CUDAHY, COFFEY, FLAUM, EASTERBROOK, RIPPLE, MANION, KANNE, and ROVNER, Circuit Judges.
 FAIRCHILD, Circuit Judge.
 
 
 1
 The Harold Washington Social Security Center and the Federal Archives and Records Center, both located in Chicago (which is in Cook County, Illinois), were constructed on land to which the federal government has title. The government does not yet have title to the buildings, which were constructed pursuant to installment contracts authorized by 40 U.S.C. Sec. 602a. Legal title is held by a third party while the installment payments are made to complete the purchase. The federal government is entitled to possession and use of the properties during the installment payment period, and legal title vests in the United States when all installment payments have been completed.[1]
 
 
 2
 Defendant Hynes assessed the Social Security Center and the Archives and Records Center pursuant to the Illinois Revenue Act for tax years 1985 through 1989. Defendant Rosewell sought to collect general property taxes for those tax years. The taxes have not been paid. In 1988, the United States brought this action for declaratory and injunctive relief, requesting that the district court declare that taxation of the properties discriminates against the United States and is therefore unconstitutional. The district court granted summary judgment for the United States as to tax year 1985, and granted summary judgment for defendants-appellants (which we will refer to collectively as "Cook County") as to tax years 1986 through 1989. Each party appeals from the judgment insofar as adverse to it.
 
 I. BACKGROUND
 
 3
 In 1972, Congress enacted the Public Buildings Amendments, Pub.L. No. 92-313, 86 Stat. 216 (1972) (codified at 40 U.S.C. Sec. 602a), authorizing the Administrator of General Services to enter into installment purchase contracts of no longer than thirty years for the purchase of federal buildings. Congress made such property subject to local taxation, until title passes to the United States:
 
 
 4
 With respect to any interest in real property acquired under the provisions of this section [Sec. 602a], the same shall be subject to State and local taxes until title to the same shall pass to the Government of the United States.
 
 
 5
 40 U.S.C. Sec. 602a(d) (1992).
 
 
 6
 Prior to 1985, Illinois provided an exemption from general property taxation to "[a]ll property that is being purchased by a governmental body under an installment contract pursuant to statutory authority and used exclusively for the public purposes of the governmental body." Ill.Rev.Stat. ch. 120, p 500.9a (1983). If the term "governmental body" included the United States, then the Sec. 602a properties in Illinois were exempted by state law. The Cook County Assessor, however, assessed ad valorem taxes on the Social Security Center for 1975 through 1978 and on the Archives and Records Center for 1972 through 1978. The United States refused to pay the taxes, arguing that p 500.9a exempted the federal properties from state and local taxation. The United States challenged Cook County's position in a declaratory judgment action; the district court granted summary judgment for the United States. Cook County appealed to this court.
 
 
 7
 That appeal presented a question of statutory construction. Cook County argued that the term "governmental body" in p 500.9a could not be construed to include the federal government because the state legislature was not empowered by the Illinois Constitution to create such an exemption.[2] A panel of this court concluded that the Illinois Constitution should be construed as implicitly recognizing the state legislature's power to enact exemptions which conform to the mandates of the federal Constitution, and held that the term "governmental body" did include the United States and accordingly, p 500.9a did exempt property being acquired by the federal government. United States v. County of Cook, Ill., 725 F.2d 1128, 1131 (7th Cir.1984) ("County of Cook ").
 
 
 8
 The panel went on to address an argument offered by Cook County that even if p 500.9a is construed to exempt property being acquired by the federal government, Sec. 602a(d) nullifies the exemption. This contention was rejected, the panel reasoning that Sec. 602a(d) does not require states to tax property being acquired by the federal government, and the United States is entitled to take advantage of a state statutory exemption. Additionally, the panel was "unconvinced that section 602a[ (d) ] in fact constitutes such a waiver," reasoning that permitting property being acquired by state or local government to incur a lighter tax burden than property being acquired by the federal government would result in discriminatory taxes on the United States or on those with whom it deals. Id. at 1131. The panel concluded that "[t]he consent found in section 602a[ (d) ] lacks the specificity we would expect to find if Congress intended to subject the United States to discriminatory taxation." Id. at 1132.
 
 
 9
 Following this court's decision in County of Cook, the Illinois legislature amended p 500.9a in 1984 (effective on January 1, 1985) to exempt from taxation
 
 
 10
 [a]ll property that is being purchased by a governmental body under an installment contract pursuant to statutory authority and used exclusively for the public purposes of the governmental body, except such property as the governmental body has permitted or may permit to be taxed.
 
 
 11
 Ill.Rev.Stat. ch. 120, p 500.9a (1992)[3] (our italics indicate language added by the amendment).
 
 
 12
 Cook County argues in this appeal that the added language avoids discrimination against the United States. It denies an exemption where the property is being acquired by a governmental body which permits the property to be taxed, and does not base a difference in treatment on the identity of the governmental body. There would be taxation, not exemption, of Sec. 602a property because the United States permits it to be taxed. In like manner, property being similarly purchased by a state or local body would be taxed, and not exempt, if the state or local body likewise permitted it to be taxed.
 
 
 13
 The district court found that the Illinois legislature was aware of the federal consent to taxation in Sec. 602a(d) and was also aware that the state and local governments had not similarly consented to taxation when it amended p 500.9a. The district court concluded that in intentionally taking advantage of this situation, Illinois imposed a discriminatory tax upon property being acquired by the federal government under an installment purchase contract. United States v. Hynes, 759 F.Supp. 1303, 1307 (N.D.Ill.1991). Relying upon County of Cook, the district court held that Sec. 602a(d) lacked the specificity necessary to consent to such discriminatory taxation, and granted summary judgment for the United States. Id. at 1308.
 
 
 14
 Cook County filed a motion to reconsider, arguing that even if the United States was entitled to an exemption from tax, it had not complied with the procedural requirements for obtaining the exemption. The district court held that the 1984 amendment was severable so that the exemption was based upon pre-amendment p 500.9a, rather than the federal Constitution, and that the federal government was required to comply with the Illinois procedural requirements for perfecting that state claim. Since the federal government had not complied with the procedural requirements and those requirements were applicable to tax years 1986 and later, Cook County was enjoined only from collecting taxes for tax year 1985. United States v. Hynes, 771 F.Supp. 928 (N.D.Ill.1991). These appeals followed.
 
 II. DISCUSSION
 
 15
 "[A] State cannot constitutionally levy a tax directly against the Government of the United States or its property without the consent of Congress." United States v. City of Detroit, 355 U.S. 466, 469, 78 S.Ct. 474, 476, 2 L.Ed.2d 424 (1958); United States v. New Mexico, 455 U.S. 720, 733, 102 S.Ct. 1373, 1382, 71 L.Ed.2d 580 (1982). Additionally, a state may not impose taxes which discriminate against the federal government (or those with whom it deals). North Dakota v. United States, 495 U.S. 423, 434-435, 110 S.Ct. 1986, 1994-1995, 109 L.Ed.2d 420 (1990); Davis v. Michigan Dep't of Treasury, 489 U.S. 803, 812-813, 109 S.Ct. 1500, 1506-1507, 103 L.Ed.2d 891 (1989). Here Congress has given consent.
 
 
 16
 In County of Cook, this court was addressing the pre-amendment p 500.9a, and was asked to construe "governmental body" to include the United States; this construction would avoid the question whether the statute would be unconstitutional if it failed to exempt property being acquired by the United States. See Frisby v. Schultz, 487 U.S. 474, 483, 108 S.Ct. 2495, 2501-02, 101 L.Ed.2d 420 (1988); Cohen v. City of Des Plaines, 8 F.3d 484, 493 (7th Cir.1993) (courts should construe statutes to avoid constitutional difficulties). The panel went on, however, to reach the constitutional question, and asserted that the statute would be discriminatory if it did not exempt property being acquired by the federal government and that "the consent found in section 602a[ (d) ] lacks the specificity we would expect to find if Congress intended to subject the United States to discriminatory taxation." County of Cook, 725 F.2d at 1132.[4] For the reasons discussed below, we conclude that Sec. 602a(d) is an unconditional waiver of immunity. We therefore overrule County of Cook to the extent the panel reasoned that taxing federal Sec. 602a property while exempting similar property of state and local governmental bodies would be unconstitutionally discriminatory and that Sec. 602a(d) is not a sufficient consent to such discriminatory taxation.
 
 
 17
 Amended p 500.9a does not provide different treatment depending on whether the acquiring body is federal, state or local. The exemption is denied only if the acquiring body permits the property to be taxed.
 
 
 18
 The United States seems to recognize that the amended statute does not make different treatment depend on whether the purchaser is the federal government or a state or local body. The United States' position is that there are in fact no state or local bodies in Illinois which permit property they are acquiring to be taxed. Thus the claim is that the United States is the victim of discrimination in fact, though the statute is neutral on its face.
 
 
 19
 The record does not make clear whether state or local governments in Cook County or elsewhere in Illinois are in fact acquiring property under circumstances which fit the exemption, or whether, if there is such property, any such acquiring body has permitted it to be taxed. The United States filed an affidavit which presents a survey showing that a number of persons inquired of were unaware of state or local bodies permitting property of this type to be taxed. Cook County challenges this material as failing to satisfy the evidentiary requirements of Rule 56(e) of the Federal Rules of Civil Procedure for material supporting summary judgment. While the claim has technical merit, Cook County, on the other hand, produced nothing to demonstrate that state or local bodies have in fact permitted taxation of this type of property.
 
 
 20
 We shall assume, however, arguendo, that there are no such instances and that there may be some number of instances where state or local government bodies are acquiring property under procedures similar to those provided in Sec. 602a, but not permitting the properties to be taxed. Perhaps some are in Chicago where the federal Sec. 602a buildings are located. Even so, we are not persuaded that unconstitutional discrimination results. This case does not fit the typical scenario of discrimination against the United States. Exempting property being acquired by the state or state-created public bodies does not relieve those bodies, in the aggregate, of a burden which is being imposed on property being acquired by the federal government. For example, if a building in question is being acquired by the state, the exemption benefits the state at the expense of the state-created taxing districts in which the building is located, but those subdivisions must make up their loss out of their own public funds. The exemption does not reduce the overall burden on the state and state-created public bodies, although it redistributes the burden among them. It does not put the United States at a disadvantage vis-a-vis the public treasuries of the state and its subdivisions.
 
 
 21
 In any event, there is no discrimination because the sole cause of the difference in treatment is Congress' decision to subject Sec. 602a property to state and local taxes. Were that provision withdrawn, p 500.9a would exempt property being acquired by the federal government, and the difference in treatment would disappear.
 
 
 22
 For several reasons we also conclude that Congress intended to subject Sec. 602a property to state and local taxation whether or not property being acquired by state or local public bodies is similarly taxed. Although the legislative history contains no specific reference to an interest in having Sec. 602a property taxed where property being similarly acquired by state or local bodies is not, it clearly shows a purpose to foster good community relations by having Sec. 602a property carry a tax burden during the period of acquisition. Representative Clausen, a member of the Public Works Committee, stated,
 
 
 23
 In addition, a key feature of the measure before us is that it provides a means to construct Federal facilities without depriving local government of vital portions of its tax base. Traditionally, Federal installations do not pay property taxes but H.R. 10488 leaves the property in private hands under the purchase-contract concept. Thus the property will make the Federal presence in the community easier to accept.
 
 
 24
 118 Cong.Rec. 13,503 (1972). Several other congressmen similarly emphasized the importance of the consent provision in easing the burden upon the local community. 118 Cong.Rec. 13,502 (statement of Rep. Harsha), 13,505 (statement of Rep. Kluczynski), and 20,107 (statement of Sen. Tower) (1972). The House Report also noted that the consent to local taxation would ease the burden upon local communities. H.R.Rep. No. 989, 92d Cong., 2d Sess. (1972), reprinted in 1972 U.S.C.C.A.N. 2370, 2373.
 
 
 25
 Exemption from local taxation for state and local government property is commonplace. It has long been recognized that the property of a state or municipality is exempt from state taxation, unless there exists the clearest statement to the contrary. See VanBrocklin v. Tennessee, 117 U.S. 151, 173-75, 6 S.Ct. 670, 682-83, 29 L.Ed. 845 (1886) and 12 Am. & Eng. Encyclopaedia of Law 367 (2d ed. 1899). The exemption
 
 
 26
 rests upon the most fundamental principles of government, being necessary in order that the functions of government be not unduly impeded, and that the government be not forced into the inconsistency of taxing itself in order to raise money to pay over to itself, which money could be raised only by other taxation; and the express exemptions are considered to be inserted in the tax laws only from abundant caution....
 
 
 27
 12 Am. & Eng. Encyclopaedia at 368-69 (footnote listing citations omitted). See also 51 Am Jur. Taxation Secs. 559-60 (1944); 84 C.J.S. Taxation Sec. 200 (1954); 71 Am.Jur.2d State and Local Taxation Secs. 339-40 (1973).
 
 
 28
 Congress must have been aware that many (if not all) states exempt state or local government body property, yet Congress did not limit Sec. 602a(d) so as to subject Sec. 602a property to taxation only where property being similarly acquired by state or local bodies would also be taxed. Congress' omission of a specific provision in that regard must imply an intent to subject Sec. 602a property to taxation regardless of whether property being acquired by state or local bodies is likewise taxed.
 
 
 29
 Cook County has pointed out that the General Services Administration has paid property taxes on Sec. 602a property in thirty-two states in which state law exempts state government property. Separate Appendix at 34a-36a. The United States concedes that it has not litigated a claim of discriminatory treatment against Sec. 602a property, except in Illinois.[5]
 
 
 30
 Our review of the constitutional and statutory provisions of the thirty-two states cited by Cook County reveals that all of the states exempt state property (and in most cases, property owned by local government bodies as well). Of these thirty-two states which have Sec. 602a buildings, sixteen arguably exempt property owned by the federal government unless the United States has consented to taxation.[6] For the provisions regarding federal property, see Alaska Const. art. XII, Sec. 12; Cal.Rev. & Tax.Code Sec. 5081(a); Conn.Gen.Stat.Ann. Sec. 12-81(1); Fla.Stat.Ann. Sec. 196.199(1)(a); Haw. Const. art. XVI, Sec. 9 and Haw.Rev.Stat. Sec. 246-36(1); Idaho Const. art. VII, Sec. 4; Ind.Code Ann. Sec. 6-1.1-10-1(a); Iowa Code Ann. Sec. 427.1(1); Kan.Stat.Ann. Sec. 79-201A; Mass.Gen.Laws Ann. ch. 59, Sec. 5; Mich.Comp.Laws Ann. Sec. 211.7; N.C.Gen.Stat. Sec. 105-278.1(a); N.Y.Real Prop.Tax Law Sec. 400(1); Or.Rev.Stat. Sec. 307.040; Penn.Stat.Ann. tit. 72, Sec. 5020-204(a)(7); Wash. Const. art. VII, Sec. 3.
 
 
 31
 Congress, in instances where it has given its consent for taxation by the states but has not intended to consent to discriminatory treatment, has said so. See e.g., 4 U.S.C. Sec. 111 ("The United States consents to the taxation of pay or compensation for personal service as an officer or employee of the United States ... by a duly constituted taxing authority having jurisdiction, if the taxation does not discriminate against the officer or employee because of the source of the pay or compensation.") (discussed in Davis v. Michigan Dep't of Treasury, 489 U.S. 803, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989)); 31 U.S.C. Sec. 3124 ("Stocks and obligations of the United States Government are exempt from taxation by a State or political subdivision of a State. The exemption applies to each form of taxation that would require the obligation, the interest on the obligation, or both, to be considered in computing a tax, except--(1) a nondiscriminatory franchise tax or other nonproperty tax instead of a franchise tax, imposed on a corporation....") (discussed in Memphis Bank & Trust Co. v. Garner, 459 U.S. 392, 103 S.Ct. 692, 74 L.Ed.2d 562 (1983)).
 
 
 32
 The present Illinois statute is not discriminatory on its face. It calls for a difference in tax treatment which does not depend on the identity of the governmental body acquiring the property, but on whether that governmental body permits taxation of the property. The different treatment of Sec. 602a property, however, results from Congress' unconditional consent to taxation of Sec. 602a property. In substance, the Illinois legislature accepted Congress' invitation to tax Sec. 602a property. If courts were to imply a condition on the United States' consent that similar state and local property must likewise be taxed, that condition would defeat in many states the announced purpose of Sec. 602a. We reject the district court's conclusion that because the Illinois legislature was aware that the United States permits taxation of Sec. 602a property while state and local bodies do not so permit, the amendment results in unconstitutional discrimination against the United States.
 
 
 33
 We conclude that taxation in Illinois of the Sec. 602a buildings in 1985 and thereafter was constitutionally permissible, and we do not reach the district court's holding that the United States forfeited the state-created exemption in the years it did not fulfill state procedural requirements.
 
 
 34
 As to tax year 1985, the judgment appealed from is REVERSED, with directions to enter judgment for defendants. As to tax years 1986 through 1989, the judgment is AFFIRMED, although not on the reasoning of the district court. Defendants-appellants shall recover their costs on appeal.
 
 
 35
 CUDAHY, Circuit Judge, concurring.
 
 
 36
 I am pleased to join Judge Fairchild's excellent opinion for the court. If anything, I think the problem here may be even simpler than he suggests. There really is no problem of discrimination at all except as may have been insinuated into the matter by United States v. County of Cook, Ill., 725 F.2d 1128 (7th Cir.1984) (which we now overrule). A question of discrimination may arise, for example, when a state legislature levies a tax more onerously on a taxpayer because that taxpayer is doing business with the United States. See, e.g., James v. Dravo Contracting Co., 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155 (1937). The theory is that such an indirect tax is a proxy for a forbidden direct tax against the United States.
 
 
 37
 But no tax can be levied against the United States without its consent. M'Culloch v. Maryland, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819). Consent, not absence of "discrimination," is the key to constitutionality. Here Congress clearly authorized a direct tax on certain federal property. And it did so without condition. Certainly there was no condition that the state also refrain from taxing comparable property. To find such a condition is to do violence to the language and to look in vain for a rational supporting policy.[1] I am, therefore, in complete agreement with the majority.
 
 
 38
 FLAUM, Circuit Judge, with whom BAUER, COFFEY, and KANNE, Circuit Judges, join, dissenting.
 
 
 39
 This case concerns the scope of the intergovernmental tax immunity doctrine. This doctrine, of course, has its genesis in M'Culloch v. Maryland, 4 Wheat. 316, 4 L.Ed. 579 (1819), which established the principle that the property, functions, and instrumentalities of the Federal Government are immune from taxation by its constituent parts. Since M'Culloch, the Supreme Court periodically has revised the immunity doctrine, allowing, for example, nondiscriminatory taxation of government employees. Graves v. New York ex rel. O'Keefe, 306 U.S. 466, 486-487, 59 S.Ct. 595, 601-602, 83 L.Ed. 927 (1939). Nevertheless, it remains a basic principle of our constitutional law that the intergovernmental tax immunity doctrine bars a tax "if it operates so as to discriminate against the Government or those with whom it deals." Davis v. Michigan Dept. of Treasury, 489 U.S. 803, 812, 109 S.Ct. 1500, 1506, 103 L.Ed.2d 891 (1989); United States v. City of Detroit, 355 U.S. 466, 473, 78 S.Ct. 474, 478, 2 L.Ed.2d 424 (1958).
 
 
 40
 As the majority observes, Opinion ante at 1439, we considered this doctrine in the context of an earlier (unamended) version of Ill.Rev.Stat. ch. 120, p 500.9a and 40 U.S.C. Sec. 602a(d) in United States v. County of Cook, Ill., 725 F.2d 1128 (7th Cir.1984). I have no quarrel with the majority's exposition of our holding in County of Cook, and I agree that all significant facts remain the same except for the Illinois legislature's amendment to p 500.9a. My disagreement with the majority opinion in this case is two-fold. First, I believe that the amendment to p 500.9a creates the same type of unconstitutional discrimination that we recognized (and managed to avoid by statutory construction) in County of Cook. Second, I find the majority's analysis of Sec. 602a(d) unpersuasive, and I remain of the view that our analysis of that section in County of Cook was correct. For these reasons, I respectfully dissent.
 
 I.
 
 41
 In County of Cook, the County first argued that p 500.9a should be construed to exempt from taxation only property owned by state and local governments, but not the United States, because Article IX, Section 6 of the Illinois Constitution did not empower the state legislature to exempt property owned by the federal government. We recognized that the County's proposed taxation scheme would have run afoul of M'Culloch by imposing a lighter tax burden on property acquired by the state or local governments than on property acquired by the federal government. County of Cook, 725 F.2d at 1131. We avoided this constitutional infirmity by construing the Illinois Constitution as implicitly recognizing the power of the state legislature to enact tax exemption statutes which conform to the mandates of the Federal Constitution, thereby enabling us to interpret the term "governmental body" in unamended p 500.9a to encompass the federal government. Id. We then rejected the County's alternative argument that even if p 500.9a applies to the federal government, the broad consent of 40 U.S.C. Sec. 602a(d) nullifies the p 500.9a exemption. First, we held that Sec. 602a(d) did not require local taxation of United States property and that the United States is entitled to take advantage of a state statutory exemption. Id. Second, and more relevant to this case, we found that Sec. 602a(d) lacked the specificity we would expect to find if Congress intended to consent to a departure from the fundamental constitutional principle of inter-governmental tax immunity. Id. at 1131-1132.
 
 
 42
 Following our decision in County of Cook, the Illinois legislature amended p 500.9a to exempt from taxation:
 
 
 43
 All property that is being purchased by a governmental body under an installment contract pursuant to statutory authority and used exclusively for the public purposes of the governmental body, except such property as the governmental body has permitted or may permit to be taxed.
 
 
 44
 Ill.Rev.Stat. ch. 120, p 500.9a (1992) (amended language in italics). Cook County then assessed property taxes against the federal government for tax years 1985 through 1989. The United States declined to pay those taxes and requested that the district court declare such taxes discriminatory and unconstitutional. The district court granted summary judgment for the United States; this panel now reverses.
 
 II.
 
 45
 The majority reasons that, as amended, the statute is facially neutral and constitutional. According to the majority, the legislature has removed the specter of discrimination from p 500.9a by conditioning property tax status on whether the acquiring unit of government consents to taxation rather than on whether the acquiring unit is federal, state, or local. Opinion ante at 1441. In the majority's view, the federal government has no one to blame but itself for its tax predicament because p 500.9a would have no impact on the federal government in the absence of Sec. 602a(d). In essence, the majority concludes that the federal government, having consented to taxation in Sec. 602a(d), cannot be heard to complain that Cook County finally has accepted its offer.
 
 
 46
 In upholding this taxation scheme, I fear that we have let slip away an opportunity to "forestall, at least to a degree, some of the manipulation and wooden formalism that occasionally have marked tax litigation--and that have no proper place in determining the allocation of power between coexisting sovereignties." United States v. California, --- U.S. ----, ----, 113 S.Ct. 1784, 1792, 123 L.Ed.2d 528 (1993) (citing United States v. New Mexico, 455 U.S. 720, 737, 102 S.Ct. 1373, 1384, 71 L.Ed.2d 580 (1982)). By resting its analysis of p 500.9a almost exclusively on the facial neutrality of the amended statute, the majority fails to probe deeply enough the question of whether "unconstitutional discrimination results." See Opinion ante at 1441-42. Discrimination against the federal government need not be explicit in a state's statute to be prohibited by the Supremacy Clause. Phillips Chemical Co. v. Dumas Independent School Dist., 361 U.S. 376, 387, 80 S.Ct. 474, 481, 4 L.Ed.2d 384 (1960) (holding Texas statute unconstitutional as applied where it resulted in lessee of federal government paying property taxes on full value of leaseholds while similarly situated lessees of the state and its political subdivisions were not taxed on their leaseholds at all). As the Phillips Court observed, a determination of whether a tax statute is discriminatory requires "an examination of the whole tax structure of the state." Id. at 383, 80 S.Ct. at 479.
 
 
 47
 In this case, the district court found that the legislative history of p 500.9a "reveals the clear intent of the Illinois legislature to 'get at' the federal government and overcome its tax immunity." United States v. Hynes, 759 F.Supp. 1303, 1305-1306 (N.D.Ill.1991); cf. Edwards v. Aguillard, 482 U.S. 578, 586-597, 107 S.Ct. 2573, 2579-2584, 96 L.Ed.2d 510 (1987) (relying on legislative history to expose the transparent insincerity of state statute's stated purpose of protecting academic freedom and holding that a state statute mandating balanced treatment of creation science and evolution in public schools violates the Establishment Clause because it has no secular purpose). Moreover, the district court found that "[t]he amendment was specifically directed at property acquired by the United States and was the result of the County of Cook case." Hynes, 759 F.Supp. at 1306. Indeed, the overwhelming weight of the evidence confirms that the amended p 500.9a, though admittedly neutral on its face, suffers from the same discriminatory purpose and effect that we would have found unconstitutional in the pre-amended p 500.9a had we not construed the term "governmental" to include the federal government. County of Cook, 725 F.2d at 1131. The only change since County of Cook--a facially neutral amendment--amounts to a thin layer of legislative camouflage that cannot conceal the fact that both before and after the amendment, the Illinois legislature intended to tax the property of the United States while leaving state and local government property untaxed. Accordingly, I believe that p 500.9a "operates so as to discriminate against the [Federal] Government," Davis, 489 U.S. at 812, 109 S.Ct. at 1506, and thus violates the intergovernmental tax immunity doctrine.[1] See United States v. County of Fresno, 429 U.S. 452, 462, 97 S.Ct. 699, 705, 50 L.Ed.2d 683 (1977) ("[T]he economic burden on a federal function of a state tax imposed on those who deal with the Federal Government does not render the tax unconstitutional so long as the tax is imposed equally on the other similarly situated constituents of the State.") (footnote omitted); United States v. City of Manassas, Va., 830 F.2d 530 (4th Cir.1987) (holding that a Virginia statute unconstitutionally discriminated against the United States by subjecting lessees of federally-owned property to local government taxation while exempting lessees of property owned by the Virginia Port Authority or local transportation districts, both of which are subdivisions of the government of the Commonwealth of Virginia), aff'd, 485 U.S. 1017, 108 S.Ct. 1568, 99 L.Ed.2d 884 (1985). The district court properly found the amendment to p 500.9a unconstitutional and severable.III.
 
 
 48
 Even if p 500.9a violates the doctrine of intergovernmental tax immunity, and thus is unconstitutional under the Supremacy Clause, it remains true that the United States still may consent to discriminatory taxation. County of Cook, 725 F.2d at 1131. In County of Cook, we recognized such consent as a theoretical possibility, but we rejected Cook County's argument that Congress intended to subject the United States to discriminatory taxation by enacting 40 U.S.C. Sec. 602a(d). Id. at 1131-1132. Today the majority concludes that Sec. 602a(d) is an unconditional waiver of immunity to taxation, and, therefore, overrules County of Cook "to the extent the panel reasoned that taxing federal Sec. 602a property while exempting similar property of state and local governmental bodies would be unconstitutionally discriminatory and that Sec. 602a(d) is not a sufficient consent to such discriminatory taxation." Opinion ante at 1440-41.
 
 
 49
 I believe that County of Cook was good law when decided and remains good law today. Section 602a(d) states:
 
 
 50
 With respect to any interest in real property acquired under the provisions of this section the same shall be subject to State and local taxes until title to the same shall pass to the Government of the United States.
 
 
 51
 40 U.S.C. Sec. 602a(d). The United States concedes that this language is at least a general consent to nondiscriminatory property taxation. See Pl.Br. at 27; Pl.Sup.Br. at 4. In discussing the question of whether, in enacting Sec. 602a(d), Congress consented to discriminatory taxation as well, the majority reasons that
 
 
 52
 Congress must have been aware that many (if not all) states exempt state or local government body property, yet Congress did not limit Sec. 602a(d) so as to subject Sec. 602a property to taxation only where property being similarly acquired by state or local bodies would also be taxed. Congress' omission of a specific provision in that regard must imply an intent to subject Sec. 602a property to taxation regardless of whether property being acquired by state or local bodies is likewise taxed.
 
 
 53
 Opinion ante at 1442. In my view, the majority assumes too much in its willingness to infer, from a mere statutory omission, that Congress intended to permit states to levy discriminatory taxes against the United States.
 
 
 54
 I have difficulty squaring the majority's approach with our own precedents or those of the United States Supreme Court. Those precedents require us to presume a narrow waiver of federal sovereign immunity and to look for expansion of that waiver only in affirmative acts of Congress, not by omission and implication. As we held in County of Cook, the United States cannot be found to have consented to a departure from a "fundamental constitutional principle" in the absence of an explicit and specific waiver. 725 F.2d at 1131-1132. In other words, a waiver of the federal government's sovereign immunity--in this case from discriminatory taxation--must be "clear, express and affirmative."[2] Kern-Limerick, Inc. v. Scurlock, 347 U.S. 110, 122, 74 S.Ct. 403, 410-11, 98 L.Ed. 546 (1954). Since County of Cook, the Supreme Court has reaffirmed this rule of construction. In two recent cases, the Court held that waivers of the Government's sovereign immunity must be "unequivocally expressed," "construed strictly in favor of the sovereign," and must not be "enlarge[d] ... beyond what the language requires." United States Dept. of Energy v. Ohio, --- U.S. ----, ----, 112 S.Ct. 1627, 1633, 118 L.Ed.2d 255 (1992); United States v. Nordic Village Inc., --- U.S. ----, ---- - ----, 112 S.Ct. 1011, 1014-1015, 117 L.Ed.2d 181 (1992). Because neither the statutory language nor the applicable rule of construction have changed since County of Cook, I would reaffirm our holding that "[t]he consent found in section 602a(d) lacks the specificity we would expect to find if Congress intended to subject the United States to discriminatory taxation." 725 F.2d at 1132.
 
 IV.
 
 55
 As I have indicated in the foregoing analysis, I believe that the district court was essentially correct in its analysis of the constitutionality of p 500.9a and the applicability of Sec. 602a(d). I disagree, however, with the district court's conclusion that the United States owes property tax on the two federal buildings in question because it failed to file administrative applications for a property tax exemption. United States v. Hynes, 771 F.Supp. 928, 932-933 (N.D.Ill.1991). Contrary to the district court's opinion, the claim of the United States to be free of the tax was not based upon Illinois law, but rather was grounded in the United States Constitution's prohibition of state taxes that discriminate against the federal government. Davis, 489 U.S. at 812, 109 S.Ct. at 1506. Once the district court correctly determined (1) that the tax discriminated against the United States in violation of the Constitution and (2) that the United States had not consented to a discriminatory tax under Sec. 602a(d), the assessed tax was void and could not be exacted. Moses Lake Homes, Inc. v. Grant County, 365 U.S. 744, 752, 81 S.Ct. 870, 874-875, 6 L.Ed.2d 66 (1961); Phillips, 361 U.S. at 387, 80 S.Ct. at 481.
 
 V.
 
 56
 For the reasons set forth above, I would affirm the district court's judgment that Ill.Rev.Stat. ch. 120, p 500.9a, as amended, unconstitutionally discriminates against the United States and that Cook County cannot collect the taxes assessed on the two federal buildings for tax year 1985. I would reverse the district court's judgment that Cook County could collect the taxes assessed on the two federal buildings for tax years 1986 through 1989, and I would direct the district court, on remand, to enjoin the collection of the taxes assessed for tax years 1986 through 1989.
 
 
 
 [1]
 The final payments for both properties are scheduled to be completed in 2003
 
 
 [2]
 Cook County argued that p 500.9a should not be construed to exempt property owned by the United States because Article IX, Section 6 of the Illinois Constitution provided that the Illinois General Assembly could exempt only state and local governmental property from taxation
 
 
 [3]
 Now codified at 35 ILCS 205/19.9a (effective January 1, 1993)
 
 
 [4]
 The panel in County of Cook did refer to another provision of the Illinois statutes, p 500.4 (now codified at 35 ILCS 205/19.4 (effective January 1, 1993)), exempting "[p]roperty of the United States, except such property as the United States has permitted or may permit to be taxed." The court noted that Sec. 602a(d) "provides the consent called for by paragraph 500.4." 725 F.2d at 1130
 
 
 [5]
 We found only two published opinions (other than County of Cook and the lower court opinions in this case) which mention Sec. 602a. In United States v. Broward County, 901 F.2d 1005 (11th Cir.1990), the United States challenged the amount of a tax assessment for a Sec. 602a building, but did not allege that the state statute was discriminatory. The pertinent Florida statute provided that "[a]ll property of the United States shall be exempt from ad valorem taxation, except such property as is subject to tax by this state or any political subdivision thereof or any municipality under any law of the United States." Fla.Stat.Ann. Sec. 196.199(1)(a). The statute also provided an exemption for "[a]ll property of this state which is used for governmental purposes ..." and "[a]ll property of the several political subdivisions and municipalities of this state ... which is used for governmental, municipal, or public purposes...." Fla.Stat.Ann. Sec. 196.199(1)(b) and (c). The other case, United States v. Metropolitan Gov't of Nashville, 808 F.2d 1205 (6th Cir.1987), is not relevant to the present issue
 
 
 [6]
 We have examined the County of Cook briefs; this material regarding the thirty-two states was not presented to the court in that case
 
 
 [1]
 The dissent quotes the district court's observation that the legislative history of p 500.9a "reveals the clear intent of the Illinois legislature to 'get at' the federal government and overcome its tax immunity." Dissent at 1445-46. I am unable to see the Illinois legislative intent as nefarious--or even relevant--given that Congress had long since freely and deliberately waived its immunity for the benefit of Illinois and other states
 Nor do I quite understand the dissent's attempt (at pages 1447-48) to collapse the doctrine of intergovernmental tax immunity, stemming from the Supremacy Clause, see M'Culloch, 17 U.S. (4 Wheat.) at 316, into the more general doctrine of federal sovereign immunity, which notoriously lacks a home in the Constitution's text, see generally Kennecott Copper Corp. v. Tax Comm'n, 327 U.S. 573, 580, 66 S.Ct. 745, 748-49, 90 L.Ed. 862 (1946) (Frankfurter, J., dissenting). Of course, I do not particularly quarrel with the contention that, despite the distinct lineages of these two doctrines, comparable formulations of their waiver standards may apply. But in any case the waiver of the immunity (however understood) given in 40 U.S.C. Sec. 602a(d) (property "shall be subject to State and local taxes") seems sufficiently "clear, express and affirmative" to satisfy any standard.
 
 
 [1]
 Cook County contends that amended p 500.9a is not discriminatory because Illinois' property tax scheme provides a political check against abusive taxation. I find this argument unpersuasive in light of the fact that the sole purpose and effect of the amendment was to tax federal property while leaving state and local government property untaxed. The state and local governments, presumably well represented in Springfield, certainly had no incentive either to complain about their own tax exempt status or to object to the prospective loss of the federal government's tax exempt status. In fact, the state and its political subdivisions stood to benefit from the inflow of federal property tax dollars. The only party adversely affected by the amendment, the federal government, had no voice in the state legislature with which to object on its own behalf. In these circumstances, there is no political check. See Davis, 489 U.S. at 815, n. 4, 109 S.Ct. at 1508, n. 4 ("The danger that a State is engaging in impermissible discrimination against the Federal Government is greatest when the State acts to benefit itself and those in privity with it.")
 In a similar vein, the majority finds support for its conclusion that the Illinois tax exemption scheme is not discriminatory because it "does not reduce the overall burden on the state and state-created bodies, although it redistributes the burden among them. It does not put the United States at a disadvantage vis-a-vis the public treasuries of the state and its subdivisions." Opinion ante at 1440. In my view, this proposition is sustainable only if one views the "public treasuries of the state and its subdivisions" as a singular whole. If Illinois and the United States were the only taxing bodies in the relevant universe, there would be neither a distribution nor a discrimination issue in this case. In such circumstances it would be illogical to require that Illinois transfer money from one side of its ledger to the other so that it could tax the federal government. However, like all states, Illinois has numerous political subdivisions with taxing and spending authority that regularly function independently of one another so that absent an exemption, a locality's tax scheme would impose a real tax burden on the state; that is, money would flow from the state treasury to the treasury of the local taxing unit. Thus an exemption for the state relieves it of this real burden and has the effect of disadvantaging the United States in particular. Indeed, as the legislative history indicates, the Cook County Assessor and the Illinois General Assembly not only recognized the possibility of such an effect, but actually intended it. See State of Illinois, 83rd General Assembly, House of Representatives Transcription Debate, June 13, 1984, at 57.
 
 
 [2]
 In his concurring opinion, Judge Cudahy is dismissive of the notion that the intergovernmental tax immunity and federal sovereign immunity doctrines are closely related, noting that the former stems from the Supremacy Clause while arguing that the latter "notoriously lacks a home in the Constitution's text." Concurring opinion ante at 1444 n. 1
 In my view, the two doctrines are so closely related as to require the application of a uniform waiver doctrine. First, the Supreme Court appears to regard the doctrine of intergovernmental tax immunity as a subspecies of the broader doctrine of federal sovereign immunity. See Kern-Limerick, Inc. v. Scurlock, 347 U.S. 110, 122, 74 S.Ct. 403, 411, 98 L.Ed. 546 (1954) ("The doctrine of sovereign immunity is so embedded in constitutional history and practice that this Court cannot subject the Government or its official agencies to state taxation without a clear congressional mandate."). Furthermore, I cannot see a distinction between the doctrines with respect to their constitutional source. I agree that federal sovereign immunity is not comfortably enshrined in the text of the Constitution, but the same can be said of intergovernmental tax immunity. Both doctrines nevertheless are indisputably incorporated in the latticework of that document. Thus, even in criticizing federal sovereign immunity as "an anachronistic survival of monarchical privilege ... [that] runs counter to democratic notions of the moral responsibility of the State," Justice Frankfurter had to concede that "this immunity from suit without consent is embodied in the Constitution." See Kennecott Copper Corp. v. Tax Comm'n, 327 U.S. 573, 580, 66 S.Ct. 745, 748, 90 L.Ed. 862 (1946) (Frankfurter, J., dissenting). Similarly, the doctrine of intergovernmental tax immunity falls within the "great outlines" of the Constitution, though no express provision makes reference to it. See M'Culloch, 17 U.S. (4 Wheat.) at 407. As then-Justice Rehnquist explained,
 Any document--particularly a constitution--is built on certain postulates or assumptions; it draws on shared experience and common understanding. On a certain level, that observation is obvious. Concepts such as "State" and "Bill of Attainder" are not defined in the Constitution and demand external referents. But on a more subtle plane, when the Constitution is ambiguous or silent on a particular issue, this Court has often relied on notions of a constitutional plan--the implicit ordering of relationships within the federal system necessary to make the Constitution a workable governing charter and to give each provision within that document the full effect intended by the Framers. The tacit postulates yielded by that ordering are as much engrained in the fabric of the document as its express provisions, because without them the Constitution is denied force and often meaning. Thus, in McCulloch [M'Culloch] v. Maryland, ... Chief Justice Marshall, writing for the Court, invalidated a state tax on a federal instrumentality even though no express provision for intergovernmental tax immunity can be found in the Constitution. He relied on the notion that the power to tax is the power to destroy, and that to concede the States such a power would place at their mercy the Constitution's affirmative grants of authority to the Federal Government--a result the Framers could not have intended.
 Nevada v. Hall, 440 U.S. 410, 433-434, 99 S.Ct. 1182, 1194-1195, 59 L.Ed.2d 416 (1979) (Rehnquist, J., dissenting) (footnote omitted).
 Judge Cudahy apparently acknowledges that a single waiver rule may be appropriate. Concurring opinion ante at 1444 n. 1. The sole basis for the foregoing discussion of federal sovereign immunity and intergovernmental tax immunity together was the establishment of this proposition.