**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**COUNTY OF COOK, ILLINOIS, et**
**al., Defendants–Appellants.**

No. 98–1107.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 14, 1998.

Decided Feb. 4, 1999.

David E. Carmack (argued), Department of Justice, Tax Division, Appellate Section, Washington, DC, David M. Katinsky, Department of Justice, Antitrust Division, Washington, DC, Thomas P. Walsh, Office of the United States Attorney, Civil Division,

Chicago, IL, Gerald A. Role, United States Department of Justice, Tax Division, Washington, DC, for Plaintiff–Appellee.

Richard A. Devine, Office of the State's Attorney of Cook County, Chicago, IL, for Plaintiff–Appellant People of the State of Illinois, on Relation of Edward J. Rosewell and the County of Cook.

Mark R. Davis (argued), O'Keefe, Ashenden, Lyons & Ward, Chicago, IL, for Defendants–Appellants.

Before EASTERBROOK, RIPPLE, and ROVNER, Circuit Judges.

EASTERBROOK, Circuit Judge.

This long-running dispute about real estate taxation of two buildings in which the United States was a tenant was resolved by *United States v. Hynes*, 20 F.3d 1437 (7th Cir.1994) (en banc). Or so we thought. But the United States now contends that because its lawyers neglected to invoke sovereign immunity it is entitled to a fresh adjudication. Needless to say, the taxing authorities reply that claim preclusion (res judicata) cannot be avoided by raising new arguments; judgments are conclusive not only with respect to arguments actually made, but also with respect to arguments that could have been made. *Nevada v. United States*, 463 U.S. 110, 129–30, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983); *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 83–85, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Cromwell v. County of Sac*, 94 U.S. 351, 24 L.Ed. 195 (1876); *Doe v. Allied–Signal, Inc.*, 985 F.2d 908, 913 (7th Cir.1993). We must decide whether there is a sovereign-immunity exception to this rule.

*Hynes* explains the essential facts, so we can be brief. Although state and local governments usually cannot tax transactions or entities in which the United States has a beneficial interest, see *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819), Congress has consented to the taxation of real estate when the United States has entered into a financing lease. 40 U.S.C. § 602a(d). Two federal buildings in Chicago were constructed under this program. Construction funds were advanced, and title was held, by private investors until the United States exercised its option to purchase outright. Cook County sought to collect real estate taxes based on the value of each building, and despite § 602a(d) the United States invoked intergovernmental tax immunity. A panel of this court sustained that defense, *United States v. County of Cook*, 725 F.2d 1128 (7th Cir.1984), but after a change in the local tax statutes the full court overruled the panel's decision and held that § 602a(d) relinquishes any immunity the United States otherwise would enjoy. After our decision the United States prepaid the leases for the remaining years and took title to both buildings, which stopped the accrual of taxes (and avoided any possibility that the buildings would be sold to satisfy unpaid tax bills). When title changed hands, the United States owed more than $65 million in taxes, interest, and penalties for 1985–93. Cook County has not sought to collect for earlier years, but the United States insists that despite our opinion it need not pay the balance. It has tendered the principal amount of taxes but refuses to pay more, observing that sovereign immunity bars interest and penalties against the United States unless Congress has authorized these remedies explicitly. *Department of Energy v. Ohio*, 503 U.S. 607, 112 S.Ct. 1627, 118 L.Ed.2d 255 (1992) (penalties); *Library of Congress v. Shaw*, 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986) (interest).

■ Section 602a(d) refers only to "taxes" and therefore, the United States insists, does not encompass interest and penalties for delayed payment of taxes. This argument could have been made in prior proceedings but was not. By the time the United States brought its action substantial interest and penalties had accrued, and more were in prospect. Some of the penalties are attributable to the sale of the County's tax claims under state law, but this does not affect the scope of preclusion. Objections to all penalties available under state and local law could have been asserted in the prior litigation. Every legal theory pertaining to one transaction is part of a single claim. E.g., *Herrmann v. Cencom Cable Associates, Inc.*, 999 F.2d 223 (7th Cir.1993); *Supporters to Oppose Pollution, Inc. v. Heritage Group*, 973

F.2d 1320 (7th Cir.1992); *Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589 (7th Cir. 1986). Although an effort to sell the buildings *today*, after the United States has acquired title, would generate a new claim, the County does not seek such relief. Only money is at issue. All of the financial consequences of nonpayment were, or could have been, addressed in the earlier litigation, and all are therefore part of the same claim. The arguments the United States now advances are foreclosed by normal principles of preclusion unless these have a sovereign-immunity exception. The district court held, 1997 U.S. Dist. Lexis 15993, 1997 WL 639049, that they do. Reaching the merits, the court concluded that, despite *Reconstruction Finance Corp. v. Beaver County*, 328 U.S. 204, 66 S.Ct. 992, 90 L.Ed. 1172 (1946), and *Federal Reserve Bank v. Richmond*, 957 F.2d 134 (4th Cir.1992), interest and penalties are not comprehended in the authorization of "taxes."

■ Two preliminary matters require attention. First is the oddity that each side has filed an appeal to a different court. Cook County and its tax officials have appealed to us. The United States took an appeal to the Federal Circuit from the portion of the district court's order that transferred to the Court of Federal Claims two legal arguments that the district court thought were based on the takings clause of the fifth amendment, and therefore came within the Court of Federal Claims' exclusive jurisdiction. We inquired at oral argument how a single judgment could be appealed to two circuits and why, if part of the case is indeed within the Court of Federal Claims' jurisdiction, the whole appeal does not lie to the Federal Circuit under 28 U.S.C. § 1295(a)(2). The answer to the second inquiry is that § 1295(a)(2) directs an appeal to the Federal Circuit only when the district court's jurisdiction depends on a statute listed in that subsection. In our case jurisdiction depends on 28 U.S.C. § 1345, which authorizes suit by the United States. Takings theories were injected as counterclaims, which do not change the jurisdictional foundation of the suit and therefore do not redirect the appeal. As for the first inquiry: 28 U.S.C. § 1292(d)(4)(A) gives the Federal Circuit exclusive jurisdiction of any appeal from an order transferring "an action" to the Court of Federal Claims under 28 U.S.C. § 1631. It is doubtful that the district court has transferred "an action", for a legal theory is not an "action" or even a claim for relief; that's the point of our treatment of preclusion; moreover, the partial transfer is problematic under 28 U.S.C. § 1500. So it may well be that the Federal Circuit lacks jurisdiction. We are confident, however, that we have jurisdiction of the County's appeal.

■ The second preliminary issue is whether sovereign immunity has anything to do with the problem at hand. Arguments before the panel in 1984, and the en banc court in 1994, concentrated on intergovernmental tax immunity for a reason: the County has not imposed a tax on the United States. Taxes must be paid by the buildings' legal owners. No rule of *sovereign* immunity prevents state and local governments from collecting taxes from landlords, banks, and other firms that do business with the United States. Only the principle of intergovernmental tax immunity, which interdicts some (though not all) taxes whose economic incidence is borne by a governmental body, could block collection, and it is this principle that the United States sought to vindicate in the earlier suits. Apparently the United States promised the builders and banks that it would pay any taxes ultimately determined to be required, but a contractual indemnity does not set up a claim of sovereign immunity. Taxes, interest, and penalties are imposed on the buildings' owners, and if they paid Cook County and the United States refused to reimburse them, that would lead to a simple contract suit in the Court of Federal Claims, a suit for which sovereign immunity has been waived by 28 U.S.C. § 1491(a)(1).

Many state and local governments indemnify their employees in actions under 42 U.S.C. § 1983. We held in *Gary A. v. New Trier High School District*, 796 F.2d 940, 945 (7th Cir.1986), and *Duckworth v. Franzen*, 780 F.2d 645, 650–51 (7th Cir.1985), that a state's assumption of private liability does not convert the action into one against the

state and permit invocation of the eleventh amendment. Equally, one would suppose, the United States' undertaking to pay taxes on behalf of a private party does not make the action against this party one against the United States, and therefore does not permit the United States to assert sovereign immunity in order to thwart the obligation that it has agreed to reimburse. But Cook County does not make an argument along these lines, and we therefore proceed on the assumption that sovereign immunity has some bearing on the litigation—though it should be clear from this discussion that it is only an assumption, which bears examination if a similar problem recurs.

■ For a long time it has been understood that the United States, like a private litigant, cannot relitigate claims that have reached final judgment. *United States v. Stauffer Chemical Co.*, 464 U.S. 165, 104 S.Ct. 575, 78 L.Ed.2d 388 (1984); *United States v. Moser*, 266 U.S. 236, 45 S.Ct. 66, 69 L.Ed. 262 (1924). (The special treatment of offensive nonmutual issue preclusion, see *United States v. Mendoza*, 464 U.S. 154, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984), does not qualify this rule when identical parties contest the sequential suits.) Likewise it is settled that a "claim" for purposes of this rule means all legal theories bearing on a set of facts; an omitted argument cannot be raised later. *Nevada v. United States*, 463 U.S. at 129–30, 103 S.Ct. 2906. To create a sovereign-immunity exception to these principles would be to abolish them, for *every* suit involving the interests of the United States potentially involves sovereign immunity. What it means to say that the United States possesses sovereign immunity is that there is no common-law or equitable liability. *OPM v. Richmond*, 496 U.S. 414, 424–26, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990). Relief depends on statutes, which should not be read to expose the United States to liability unless Congress makes a remedy available explicitly. *United States v. Sherwood*, 312 U.S. 584, 589–91, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969); *United States v. Testan*, 424 U.S. 392, 399–403, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *Army & Air Force Exchange Service v. Sheehan*, 456 U.S. 728, 738–41, 102 S.Ct. 2118, 72 L.Ed.2d 520 (1982); *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33–34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); *FDIC v. Meyer*, 510 U.S. 471, 475–83, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); *Pullman Construction Industries, Inc. v. United States*, 23 F.3d 1166 (7th Cir.1994). Thus *every* statute authorizing the courts to adjudicate claims to property or funds of the United States is a waiver of sovereign immunity, and *every* argument that the United States makes (or omits) in defense is in the end an argument about sovereign immunity. Even prospective relief depends on the waiver of sovereign immunity in 5 U.S.C. § 702. Compare *Bowen v. Massachusetts*, 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988), with *Department of the Army v. Blue Fox, Inc.*, —— U.S. ——, 119 S.Ct. 687, —— L.Ed.2d —— (1999).

Consider a suit under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–80. The plaintiff says that he received negligent medical treatment in a veterans' hospital; the United States denies that the treatment was negligent; after a trial the judge rules in the plaintiff's favor and awards damages. Must the United States pay? One would suppose so; but if there is a sovereign-immunity exception to the law of judgments then it need not. Instead the United States could balk, force the plaintiff to sue to enforce the judgment, and assert some additional defense— say, that the administrative claim or suit was untimely under 28 U.S.C. §§ 2401(a) and 2675(a). Because the FTCA waives sovereign immunity, each limitation presents a question about the extent of the waiver. See *United States v. Kubrick*, 444 U.S. 111, 117–18, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). See also *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976); *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). If there is a sovereign-immunity exception to claim preclusion, then the United States could make its timeliness defense in a second suit. And if it lost that suit, it *still* could refuse to pay and insist that the plaintiff file a third suit in order to address the discretionary-function exception to liability, 28 U.S.C. § 2680(a), a fourth to overcome

the intentional-tort exception, § 2680(h), and so on *ad infinitum*. At oral argument counsel for the United States candidly conceded that this is a logical consequence of the position the government advances.

■ It is a most unpalatable consequence—likely an unconstitutional one. For it would reduce to advisory status all decisions adverse to the financial interests of the United States. If the United States thinks that it has a new and better argument, it would be free to ignore the judgment and go on as before. That prospect led the Supreme Court to hold that federal courts may not decide veterans' claims under a statute that left their decisions subject to administrative approval. *Hayburn's Case*, 2 U.S. (2 Dall.) 409, 1 L.Ed. 436 (1792). Justice Kennedy worried last spring that permitting a government to raise sovereign immunity for the first time on appeal would allow it "to proceed to judgment without facing any real risk of adverse consequences." *Wisconsin Department of Corrections v. Schacht*, —— U.S. ——, ——, 118 S.Ct. 2047, 2055, 141 L.Ed.2d 364 (1998) (concurring opinion). How much worse if the governmental body *never* had to raise the defense in the first litigation, but could simply ignore the judgment and insist that its adversary try again! That approach is not compatible with the Constitution, for Article III courts exercise the "judicial Power of the United States"— which is to say, a power to enter judgments that are conclusive between the parties. *Plaut v. Spendthrift Farms, Inc.*, 514 U.S. 211, 218–19, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995). Although the raw power of Congress to withhold appropriations means that a given judgment requiring the United States to pay money may be unenforceable, this remote possibility does not render all judgments advisory. *Glidden Co. v. Zdanok*, 370 U.S. 530, 571, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962) (plurality opinion). But the position taken by the United States in this case would make judgments contingent on the inability of federal lawyers to think up a new theory. Many a lawyer comes to believe, after a case is over, that a better line of argument was available. If the United States is right, then it is entitled to as many bites at the apple as

it finds necessary, until it has prevailed or exhausted all available lines of argument.

Our point is not that exceptions to claim preclusion, and the possibility of collateral attacks on judgments, make decisions "advisory" as a rule. Judgments adverse to private litigants have consequences unless upset. Execution will issue on a money judgment, and the losing party's assets will be sold if the judgment is not paid. A criminal conviction leads to imprisonment, and the possibility that the prisoner may be entitled to relief on a collateral attack does not make the commitment to prison "advisory", even though the duration of custody may be affected by collateral attacks. What is special about litigation involving the financial interests of the United States, however, is that the judgment does not authorize execution on assets. The marshal will not sell a national park at auction or confiscate an aircraft carrier to satisfy the claim—and the decision to prepay the leases and take title to the buildings prevented Cook County from collecting by selling the privately-owned buildings. See *J.W. Bateson Co. v. United States*, 434 U.S. 586, 589, 98 S.Ct. 873, 55 L.Ed.2d 50 (1978) (liens "cannot attach to Government property"). Enforcement thus depends, as Justice Harlan's plurality opinion in *Glidden* emphasized, on the good-faith cooperation of those officials in the political branches of government who are authorized to write checks on the Treasury. If these same officials are entitled to disregard a judgment when they conclude that the government's lawyers did not make the appropriate arguments, then the premise of *Glidden* no longer holds, and the judgment has been rendered advisory.

But of course this is not the first time that a governmental body has argued that it can keep litigating, and the Supreme Court has responded that judgments have teeth. Two taxation cases illustrate. South Carolina enacted a statute exempting a railroad's property from taxation. Several counties nonetheless attempted to collect property taxes from the railroad, and an investor filed suit in federal court seeking a declaration that the taxation was impermissible. The state

intervened to argue in support of the taxes and lost on the merits when the Supreme Court held that the statute entitled the railroad to a complete property-tax exemption. When the state later enacted and attempted to enforce a statute that would permit the counties to collect 10 years' worth of property taxes, it was met with an argument that the propriety of taxation had been resolved already, to which the state replied (among other things) that the first judgment was ineffectual because it had not surrendered its immunity under the eleventh amendment to suit in federal court. Yes, it had, the Court concluded in *Gunter v. Atlantic Coast Line R.R.*, 200 U.S. 273, 26 S.Ct. 252, 50 L.Ed. 477 (1906). By intervening in the initial case yet omitting any argument based on the eleventh amendment, the state surrendered the option of making such an argument in a later case. A state, the Court held, "cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment." *Id.* at 284, 26 S.Ct. 252. See also *Petty v. Tennessee–Missouri Bridge Comm'n*, 359 U.S. 275, 276, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959); *Gardner v. New Jersey*, 329 U.S. 565, 574, 67 S.Ct. 467, 91 L.Ed. 504 (1947); *Missouri v. Fiske*, 290 U.S. 18, 24–25, 54 S.Ct. 18, 78 L.Ed. 145 (1933); *Clark v. Barnard*, 108 U.S. 436, 447–48, 2 S.Ct. 878, 27 L.Ed. 780 (1883). Just so, one would think, with the United States, which as the plaintiff in a suit seeking to enjoin Cook County's taxation of the two buildings is poorly situated to contend that sovereign immunity protects it from an adverse outcome.

The other example is *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). Montana imposed a gross receipts tax on builders of public construction projects. The United States directed the contractor on a federal dam project in Montana to file suit in state court in an effort to have the tax declared invalid. The firm sued and lost. Later the United States filed its own action in federal court seeking an injunction against collection of the tax from its contractors, only to be met by a defense of preclusion. The Supreme Court held that the United States was not entitled to litigate a second time. The contractor served as its proxy in the first suit, the Court held, which

meant that the judgment had the same preclusive effect as if the United States itself had been the litigant. Yet if the United States is right in our case, *Montana* should have come out the other way, for the contractor did not assert sovereign immunity and as a private firm could not have done so. *Montana* could be chalked up as a case in which the United States did not argue for a sovereign-immunity exception—but then perhaps the Solicitor General saw little merit to an argument that claim preclusion has a sovereign-immunity exception. No matter. *Montana* illustrates the normal application of res judicata to successive suits involving the taxation of firms that furnish goods or services to the United States.

■ The foundation of the United States' current position is that agents of the Executive Branch, including its lawyers, cannot waive the sovereign immunity of the United States. Only Congress and the President, acting together through legislation, may do so. See also Art. I § 9 cl. 7: "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law". Giving legal effect to an attorney's failure to make a sovereign-immunity argument would permit that attorney to waive the immunity of the United States, the argument concludes. The problem with this argument lies not in its premises but in the expression of its conclusion—for a court does not "give effect" to attorneys' arguments (or silence). It is the judgment of the court, and not of the attorneys, that has legal effect. A court with authority to consider and reject an invocation of sovereign immunity also has authority to enter judgment adverse to the interests of the United States without "waiving" (or violating) that immunity.

■ To see this consider a close parallel: rulings that concern (or suppose the existence of) subject-matter jurisdiction. No court may decide a case without subject-matter jurisdiction, and neither the parties nor their lawyers may stipulate to jurisdiction or waive arguments that the court lacks jurisdiction. If the parties neglect the subject, a court must raise jurisdictional questions itself. See *Christianson v. Colt Indus-*

*tries Operating Corp.*, 486 U.S. 800, 818, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988); *Indiana Gas Co. v. Home Insurance Co.*, 141 F.3d 314 (7th Cir.1998). But if the court decides a case on the merits after an adversarial presentation, the judgment cannot be collaterally attacked on the ground that the court lacked subject-matter jurisdiction. The parties' failure to address jurisdiction fully or cogently does not deprive the judgment of force. *Durfee v. Duke*, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963). Indeed, the parties' failure to address a jurisdictional issue at *all* does not diminish the authority of the judgment. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n. 9, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) ("A party that has had *an opportunity* to litigate the question of subject-matter jurisdiction may not ... reopen that question in a collateral attack upon an adverse judgment.") (emphasis added); *Underwriters National Assurance Co. v. North Carolina Life & Accident & Health Insurance Guaranty Ass'n*, 455 U.S. 691, 705–10, 102 S.Ct. 1357, 71 L.Ed.2d 558 (1982); *Stoll v. Gottlieb*, 305 U.S. 165, 171–72, 59 S.Ct. 134, 83 L.Ed. 104 (1938); *In re Edwards*, 962 F.2d 641, 644 (7th Cir.1992); cf. *Swift & Co. v. United States*, 276 U.S. 311, 326, 48 S.Ct. 311, 72 L.Ed. 587 (1928). The *Restatement (2d) of Judgments* (1982) recognizes exceptions to this norm, but none is applicable to the ordinary case in which, say, the parties fail to notice the lack of complete diversity of citizenship:

> When a court has rendered a judgment in a contested action, the judgment precludes the parties from litigating the question of the court's subject matter jurisdiction in subsequent litigation except if: (1) The subject matter of the action was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority; or (2) Allowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government; or (3) The judgment was rendered by a court lacking capability to make an adequately informed determination of a question concerning its own jurisdiction and as a matter of procedural fairness the party seeking to avoid the judgment should have opportunity belatedly to attack the court's subject matter jurisdiction.

*Restatement* § 12. There is another, and more commonly used, exception to the principle that a court's jurisdiction may not be collaterally attacked. A party that simply refuses to appear may contend in a later case that the first tribunal lacked jurisdiction—though jurisdiction is the only issue thus preserved, and if the first court had jurisdiction then the judgment must be enforced. See *Earle v. McVeigh*, 91 U.S. 503, 507, 23 L.Ed. 398 (1875); *Williams v. General Electric Capital Auto Lease, Inc.*, 159 F.3d 266 (7th Cir.1998); *Metropolitan Life Insurance Co. v. Cammon*, 929 F.2d 1220, 1222–23 (7th Cir.1991). The exception is necessary because otherwise a court that lacked jurisdiction could strong-arm a party to litigate the subject, decide in favor of its own power, and thus block any review of its adjudicatory competence. Notice, however, that none of these exceptions has anything to do with the rule that parties may not waive jurisdictional shortcomings or stipulate to jurisdiction. A final judgment is the work of the court, not of the parties, and as a court has jurisdiction to determine its own jurisdiction it may decide the subject; whether it does so expressly or by implication the decision ordinarily is conclusive. Cf. *Baltimore & Ohio Chicago Terminal R.R. v. Wisconsin Central Ltd.*, 154 F.3d 404, 412 (7th Cir.1998). This approach is essential if judgments are to resolve the parties' disputes, rather than just set the stage for the next act.

If the rule that jurisdictional issues cannot be waived or forfeited by counsel does not permit a party that has litigated the merits but neglected a jurisdictional objection to wage a collateral attack, why should the principle that sovereign immunity cannot be waived or forfeited by counsel permit a party that has litigated the merits but neglected a sovereign-immunity objection to wage a collateral attack? For most purposes it overstates the strength of sovereign immunity to analogize it to a lack of jurisdiction. Any difference between the two should make it easier to raise a jurisdictional objection belatedly than to raise a sovereign-immunity ob-

jection belatedly. As we have explained, what sovereign immunity means is that relief against the United States depends on a statute; the question is not the competence of the court to render a binding judgment, but the propriety of interpreting a given statute to allow particular relief. See *Irwin*, 498 U.S. at 95–96, 111 S.Ct. 453. Our opinion in *Hynes* interpreted § 602a(d) to allow Cook County to tax the two buildings using the same rules that apply to real estate in which the United States is not a tenant. That may be right or wrong, but it was within the court's subject-matter jurisdiction (recall that the United States was the plaintiff, so 28 U.S.C. § 1345 supplied jurisdiction). The United States had an opportunity to make a sovereign-immunity argument in a tribunal authorized by law to hear and decide that argument; it could not help itself to another go-round by failing to make an argument in the appointed place at the appointed time.

Despite all of this, the district judge wrote that a sovereign-immunity "exception to res judicata has a long, unbroken history." 1997 U.S. Dist. LEXIS 15993 at *36, 1997 WL at *9. Cases such as *Gunter* and *Montana* show that "unbroken" is not an apt description. As for "long": the district court cited only two decisions of the Supreme Court. One is *Durfee*, which holds that questions of subject-matter jurisdiction litigated and resolved adversely to a party are covered by res judicata. This hardly establishes a sovereign-immunity exception to claim preclusion (not only because the Court rejected an argument for an exception, but also because sovereign immunity had not been invoked in *Durfee*), but on the way to decision the Court made this remark:

> To be sure, the general rule of finality of jurisdictional determinations is not without exceptions. Doctrines of federal pre-emption or sovereign immunity may in some contexts be controlling. *Kalb v. Feuerstein*; *United States v. United States Fidelity & Guar. Co.* But no such overriding considerations are present here.

375 U.S. at 114, 84 S.Ct. 242 (footnote omitted). "[M]ay in some contexts" poses but does not answer the question "in *which* contexts?" For the answer one must turn to *United States v. United States Fidelity & Guaranty Co.*, 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940) *(USF&G)*, the second case on which the district judge relied. (*Kalb*, the other case cited in *Durfee*, is irrelevant to our problem; it concerns the effect of the automatic stay in bankruptcy law.)

In *USF&G* the United States, as trustee for the Choctaw and Chickasaw Nations, filed a claim for $2,000 in the bankruptcy of the Central Coal & Coke Company. The coal company responded with a cross-claim for some $11,000, which the United States ignored—for claims against Indian tribes had to be filed in a "United States court in the Indian Territory", a category to which the bankruptcy court did not belong. Nonetheless the referee in bankruptcy allowed the coal company's claim, leaving it the Tribes' judgment creditor to the tune of $9,000. When the coal company attempted to enforce this judgment, the United States resisted on immunity grounds. After assimilating the sovereign immunity of Indian tribes to that of the United States (see *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.*, 523 U.S. 751, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998)) the Court observed: "No statutory authority granted jurisdiction to the Missouri Court [i.e., the referee in bankruptcy] to adjudicate a cross-claim against the United States." 309 U.S. at 512, 60 S.Ct. 653. After additional exposition the Court declared the referee's decision "void" to the extent it awarded the coal company relief in excess of setting off the original $2,000 claim. The Court's analysis has two strands. One emphasizes the referee's lack of subject-matter jurisdiction and the other the Tribes' sovereign immunity, neither of which attorneys could waive. This second strand is the peg on which the United States now hangs its hat. Some language in *USF&G* supports that understanding. Other language supports the view that the Court thought of the case as one combining the absence of subject-matter jurisdiction with a litigant's disdain of the tribunal—a combination that traditionally permits a collateral attack (though one limited to the jurisdictional issue).

Which is the right way to understand the case? One clue is the Court's thoroughgoing equation of sovereign immunity to a jurisdictional shortcoming—for this suggests that the rule giving effect to a court's determination of its own jurisdiction carries over to potential sovereign immunity defenses. A second clue is the Court's statement of the questions presented:

> This certiorari brings two questions here for review: (1) Is a former judgment against the United States on a cross-claim, which was entered without statutory authority, fixing a balance of indebtedness to be collected as provided by law, res judicata in this litigation for collection of the balance; and (2) as the controverted former judgment was entered against the Choctaw and Chickasaw Nations, appearing by the United States, does the jurisdictional act of April 26, 1906, authorizing adjudication of cross demands by defendants in suits on behalf of these Nations, permit the former credit, obtained by the principal in a bond guaranteed by the sole original defendant here, to be set up in the present suit.

309 U.S. at 509, 60 S.Ct. 653. This puts the case squarely in the jurisdictional camp and supports a reading that it was the referee's lack of subject-matter jurisdiction, rather than counsel's failure to advance a sovereign-immunity defense before the referee, that made the judgment void. On that understanding *USF&G* offers the United States no aid, for the subject-matter jurisdiction of the district court (and this court) in *Hynes* is beyond doubt. Still a third reason for thinking that *USF&G* is about subject-matter jurisdiction rather than a sovereign-immunity exception to the enforcement of judgments is the dire effect of the latter reading, which would make res judicata all but disappear for claims against the United States and make many judgments advisory in the process. The Court did not suggest that its decision had such a sweeping effect, and no later case imputes that consequence to *USF&G*. Indeed, the opinion in *USF&G* vanished from the law of judgments as soon as the ink dried on volume 309 of the United States Reports. Other than the elliptical reference in *Durfee*, the case has been cited by the Supreme Court

only for the proposition that Indian tribes possess sovereign immunity. Opinions such as *Montana, Nevada,* and *Stauffer Chemical* do not cite or distinguish USF&G, though it would have been a major stumbling block to those decisions if it had the effect that the United States now attributes to it.

*USF&G* is the beginning and end of the Supreme Court cases on which the United States relies. We conclude that *USF&G* does not protect the United States from the risk of losing a case it brought on its own behalf in the proper court. *USF&G* permits the United States to ignore proceedings instituted against it in the wrong court. It has used this privilege to ignore proceedings in the Circuit Court of Cook County to collect the real estate taxes; *USF&G* protects the United States from the *ex parte* judgments entered in those cases, but not from the loss in its own suit. None of the other cases that the district court cited holds that the United States may initiate a case in a court that possesses subject-matter jurisdiction, vigorously contest the merits, and then refuse to accept defeat on the ground that its lawyers did not adequately argue sovereign immunity. Some of these cases, such as *Department of the Army v. Federal Labor Relations Authority*, 56 F.3d 273 (D.C.Cir.1995), did not even involve judgments. (The supposed "waiver" in that case occurred before the FLRA, and the court of appeals held that the extent of sovereign immunity was open to judicial review when the dispute finally reached a court.) Other cases involved claims filed in the wrong court, as in *USF&G* itself, or against the wrong parties, as in *Sterling v. United States*, 85 F.3d 1225 (7th Cir.1996). None was similar to the pattern of litigation between the United States and Cook County. If as in *Montana* the United States had used the banks as stalking horses in the initial rounds of this dispute, it would today be bound by the adverse decision. It is no less bound when it litigates in its own name.

REVERSED.

ILANA DIAMOND ROVNER, Circuit Judge, dissenting.

The majority holds that a claim of sovereign immunity litigated in a prior action can-

not be relitigated in a later action. That is not, however, what happened here. The claims before us today were never litigated in *United States v. Hynes*, 20 F.3d 1437 (7th Cir.1994) (*en banc*), and in fact some arguably arose only after *Hynes*. The majority employs the legal fiction that all claims arising from a single transaction are one claim to assert that the government has already argued immunity and cannot do so again. Because I do not think *United States v. United States Fidelity & Guaranty Co.*, 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940) ("*USF&G*"), supports that holding, I respectfully dissent.

A very brief recitation of the facts is necessary. In *Hynes*, the U.S. Government ("Government") brought a declaratory judgment action seeking to preclude Cook County from imposing, assessing, or collecting taxes on real property owned by the Government. The complaint acknowledged that interest and penalties were being imposed as well as taxes, but requested relief only from taxes. Cook County did not file a counterclaim seeking the taxes, interest, or penalties, choosing instead to pursue such judgments in the state court. We rejected the Government's claim of immunity in *Hynes* in an *en banc* decision. Cook County obtained judgments in state court against the Government for interest and penalties and orders of tax sale for those properties. The Government did not appear in those state court actions and did not consent to jurisdiction. The Government subsequently filed the declaratory judgment action which underlies this appeal, seeking injunctive and declaratory relief from interest, penalties and tax sales based on principles of sovereign immunity.

At issue before this Court today is whether the failure of the Government to challenge the interest, penalties and tax sales in *Hynes* precludes it from raising the defense of sovereign immunity now. Generally, under the doctrine of res judicata, a prior judgment has preclusive effect over claims that were actually raised or could have been raised in the prior proceeding. Claims that "could have been raised" include those that arose out of the same transaction as the claims that were raised. Although some of the claims in the instant case possibly could not have been raised in *Hynes*,[1] I will assume for purposes of this dissent that all claims raised here could have been raised in *Hynes*. None of the claims in the present case, however, were actually litigated in *Hynes*. The general rule of preclusion is subject to exceptions, one of which is set forth in *USF&G* and which applies in this case.

In *USF&G*, the Supreme Court held that collateral estoppel did not preclude the Government from raising a sovereign immunity defense to a royalties claim that had been actually decided in a prior case brought by the Government. 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894. In the earlier action, the Government had not presented any sovereign immunity defense, and the court had decided the royalties claim adversely to the Government. *Id.* at 510, 60 S.Ct. 653 The Government subsequently brought another action, and a party argued that the Government was collaterally estopped from challenging the first decision. *Id.* at 511, 60 S.Ct. 653. The Court held, however, that the immunity of the United States cannot be waived by the action of government officials—specifically, by the failure of those officials to raise the sovereign immunity defense in the preceding action. *Id.* at 513–14, 60 S.Ct. 653. That was because consent to be sued could only be granted by Congress. *Id.* at 514, 60 S.Ct. 653. The Court further held that "[t]he reasons for the conclusion that this immunity may not be waived govern likewise the question of res judicata.... Consent alone gives jurisdiction to adjudge against a sovereign. Absent that consent, the attempted exercise of judicial power is void." *Id.* at 514, 60 S.Ct. 653. When faced with the "collision between the desirable principle that rights may be adequately vindicated through a single trial of an issue and the sovereign right of immunity from suit ... [w]e are of the opinion ... the doctrine of immunity should prevail." *Id.* at 514–15, 60 S.Ct. 653. The Court explicitly stated that the "desirability for complete settlement of all issues between parties must

---

1. For instance, the government challenges the computation of interest and penalties that oc- curred after *Hynes,* and challenges post-*Hynes* tax sales.

... yield to the principle of immunity." *Id.* at 513, 60 S.Ct. 653.[2]

We are presented with a similar situation in this case. The Government in this case failed to raise any challenge regarding interest, penalties, and tax sales in *Hynes*. As in *USF&G*, however, the failure of the Government to raise a sovereign immunity claim cannot waive the Government's immunity. The principles of res judicata that would prevent the Government from raising immunity now cannot control where there is a clash between the immunity interest and the desire for finality of judgments. *Id.* at 513–14, 60 S.Ct. 653. Arguably, this case is even stronger than *USF&G*, because there the royalties claim was actually decided by the Court while the government stood mute regarding its immunity rights. In this case, no court has addressed the claims regarding interest, penalties, and tax sales,[3] and the interest in finality of judgments is presumably weaker.

Ultimately, the majority refuses to distinguish between claims actually litigated and those that could have been raised, holding that they are all one claim. Because they are considered one claim, the majority asserts that the government cannot litigate an immunity claim and then bring a subsequent action asserting a second immunity claim. Moreover, from this premise the majority expresses the fear that the Government could raise its attacks on a judgment piecemeal. This is not, however, a challenge to the obligation to pay taxes, which was decided in *Hynes*. If the Government unveiled a "new" immunity challenge to the taxes, such as is envisioned in the majority opinion, then a different result might be required. *USF&G* does not necessarily require that the Government be allowed to argue its immuni-

ty defense multiple times. The Supreme Court hinted as much in *Durfee v. Duke*, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963):

> To be sure, the general rule of finality of jurisdictional determinations is not without exceptions. Doctrines of federal pre-emption or sovereign immunity may in some contexts be controlling. *Kalb v. Feuerstein*, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370; *United States v. United States Fidelity & Guaranty Co.*, 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894. [12]
>
> ———
> 12. It is to be noted, however, that in neither of these cases had the jurisdictional issues been *actually litigated* in the first forum.....

375 U.S. at 114, 84 S.Ct. 242 (emphasis added).

The claims in the present case, however, were not actually argued in *Hynes*. We are instead presented with an immunity challenge regarding claims that arguably could (and should) have been presented in *Hynes* but were not. This is not a second bite at the tax decision. It is a first bite at penalties, interest, and tax sales. The only question is whether the failure of the Government attorneys to raise it in the prior case can preclude the Government from now asserting immunity to those subsequent state court judgments. *USF&G* establishes that the failure of a government official to assert an immunity claim that could have been made does not preclude the Government's later assertion of that claim. The right of immunity supersedes the interest in adjudication of all related issues in a single case. Just as the Government officials could not consent to waive immunity by failing to raise the immunity defense in *USF&G*, they could not consent to waive immunity by failing to raise the

———

2. The majority dismisses *USF&G* by characterizing the holding as based on principles of subject matter jurisdiction rather than sovereign immunity. A plain reading of that case suggests otherwise. *See, e.g.,* Wright and Miller, FEDERAL PRACTICE AND PROCEDURES § 4429 (stating that *USF&G* was not based on jurisdiction but rather "[t]he decision rested solely on the ground of sovereign immunity and the doctrine that sovereign immunity cannot be waived."). Moreover, I cannot agree that "it overstates the strength of sovereign immunity to analogize it to lack of jurisdiction," with the former being of less weight than the

latter. *See* Maj. Op. at 388–89. The principle of sovereign immunity has been afforded much more protection—and respect—by the courts than the majority would afford it here.

3. And in fact, the government often retains immunity from interest even if it consents to waive immunity regarding the underlying judgment. *See Library of Congress v. Shaw*, 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986). As in this case, the immunity analysis may be very different regarding the two.

interest, penalties and tax sales claims in this case. Although I am dismayed by the protracted approach taken by the Government, I am constrained by *USF&G* to conclude that the Government is not precluded from pursuing the claims in this case. If *USF&G* is to be reconsidered or limited, that remains the province of the Supreme Court. Because I agree with the district court's conclusions on the merits, I would affirm the decision of the district court.