Thomas J. MORIARTY, Trustee of Local Union No. 727, I.B.T. Pension Trust, and Teamsters Local Union No. 727 Health and Welfare Trust, Plaintiff,

v.

James F. SVEC II, Svec & Sons Funeral Home, and West Suburban Livery, Defendants.

No. 98 C 6533.

United States District Court,
N.D. Illinois,
Eastern Division.

June 30, 1999.

See also 994 F.Supp. 963, vacated and remanded, 164 F.3d 323.

Marisel Ayabarreno Hernandez, David S. Allen, Jacobs, Burns, Sugarman, Orlove & Stanton, Chicago, IL, for plaintiff.

Douglas Alan Darch, James Patrick Hanlon, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for defendants.

## CORRECTED MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Thomas Moriarty, a trustee of pension and health funds ("the Funds") for Teamster Local 727, seeks recovery of allegedly delinquent contributions to those Funds from James Svec ("Svec"), the owner and operator of Svec & Sons Funeral Home ("Funeral Home") and West Suburban Livery ("WSL"). Moriarty maintains that Svec owes the Funds payments on behalf of chauffeurs and day trippers employed by his companies.

This lawsuit, however, is Moriarty's second against Svec, the Funeral Home, and WSL. In November 1996 Moriarty filed suit against Svec claiming the right to recover contributions to the Funds. See Moriarty v. Svec, 164 F.3d 323 (7th Cir. 1998) ("Svec I"); Moriarty v. Svec, 994 F.Supp. 963 (N.D.Ill.1998). There the district court granted summary judgment for Moriarty but, in Svec I, the Seventh Circuit remanded the case for a determination of whether Svec, the Funeral Home's owner as well as its director, is an "employee" of the Funeral Home.

Svec seeks summary judgment in this case, arguing that res judicata bars all claims that Moriarty could have brought in Svec I, and that his companies were under no obligation to contribute to the Funds after 1995. Thus, according to Svec, Moriarty cannot establish any right of recovery. Svec also contends that Article I § 7 of the collective bargaining agreement, (Pl.'s Ex. 1, Articles of Agreement ("CBA")), violates the National Labor Relations Act's prohibition against union signatory clauses, 29 U.S.C. § 158(e), and therefore is unenforceable. If § 7 violates the Act, argues Svec, then he cannot be liable for contributions to the Funds for work performed by non-employees.

For the reasons that follow, we grant in part and deny in part Svec's motion. Specifically, we conclude that res judicata bars those claims that Moriarty could have presented in Svec I. But the language of the challenged CBA provision demonstrates an ambiguity as to its meaning; thus, we cannot conclude as a matter of law that the provision violates the Act. Nor has Svec established that his duty to contribute to the Funds on behalf of his employees ceased in December 1995. Thus, summary judgment is inappropriate as to Moriarty's claims for post-Svec I contributions on behalf of chauffeurs and day trippers.

## BACKGROUND

The Funeral Directors Services Association ("FDSA" or "Association") is a multi-

employer bargaining association representing approximately 250 businesses that provide funeral, livery, and funeral transportation services. The Funeral Home and WSL were members of the Association until December 1995, when they withdrew. The companies, however, did not notify the Union of their withdrawal from the FDSA until March 27, 1997.

The FDSA and the Union are signatories to a long series of collective bargaining agreements. The CBA at issue here covers the time between March 1, 1995 and February 28, 1998. Among other things, the CBA requires FDSA members to contribute to the Union's Pension Trust and Health & Welfare Fund, what we are calling "the Funds", on behalf of "each Employee covered by this Agreement." (CBA Art. V § 2.) The CBA defines "employee" as "[a]ny member of the Union who is in the employ of an Employer member [sic] who is an auto livery chauffeur," (CBA Art. XIII), and contains provisions regarding both full-time employees and day trippers (i.e., drivers hired on a day-to-day or per-job basis). Finally, at issue in this case is CBA Article I § 7: "Pursuant to our Past Practice, the Employer Member agrees to use only livery under contract with Teamster Local 727."

Apparently, Svec has never contributed to the Funds for himself (as an employee of the Funeral Home) or WSL's employees.[1] On November 13, 1996, Moriarty filed *Svec I*, seeking recovery of these allegedly delinquent contributions. The district court entered summary judgment for Moriarty on both claims, but the Seventh Circuit reversed as to contributions for Svec himself. The appeals court held that the CBA's definition of "employee" did not unambiguously include Svec—the owner of, as well as a worker at, the Funeral Home. *Svec I*, 164 F.3d at 335. The Seventh Circuit affirmed the district court's conclusion that WSL employees were covered by the CBA and, therefore, that Svec had to contribute to the Funds on their behalf. *Id. Svec I* is back before the district court.

Moriarty filed this lawsuit in October 1998, seeking (1) an order compelling WSL to submit to an audit for the period May 1988 through September 1993; (2) delinquent contributions for WSL employees for the period January 1, 1996 through March 1, 1998; and (3) delinquent contributions for Funeral Home employees for the period March 1, 1995 through February 28, 1998. The complaint does not name the employees, but instead refers to audits that name numerous employees of both the Funeral Home and WSL for whom Svec never made contributions to the Funds.

In his summary judgment motion, Svec argues that res judicata bars all claims arising prior to November 13, 1996, the day *Svec I* was filed; and that CBA Article I § 7 is an unenforceable union signatory clause. Moriarty concedes the res judicata issue, but contests Svec's Article I § 7 argument. Once the motion was fully briefed, we instructed the parties to submit supplemental briefs on the question whether Moriarty could state a claim given his res judicata concession and the Seventh Circuit's statement that Svec's December 1995 withdrawal from the FDSA ended his obligation to contribute to the Funds. *See Svec I*, 164 F.3d at 332 ("[T]he date the Funeral Home withdrew from the FDSA[ ] end[ed] its obligation to make any new contributions to the Funds."). We address each issue in turn.

## ANALYSIS

Summary judgment is appropriate when the movant demonstrates that there are no genuine trial issues and that he is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). Svec's motion is premised

---

1. For a complete history of Svec's ownership interest in the two businesses, see *Svec*, 994 F.Supp. at 964–65.

exclusively on legal arguments; thus Moriarty's contention that summary judgment would be premature because discovery is incomplete is unavailing. *Brill v. Lante Corp.,* 119 F.3d 1266, 1275 (7th Cir.1997) (citing Fed.R.Civ.P. 56(b)).

## I. Res Judicata

■ Res judicata, now more commonly known as claim preclusion, forbids parties from relitigating issues that were or could have been raised in an earlier lawsuit between them. *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *United States v. County of Cook, Ill.,* 167 F.3d 381, 383 (7th Cir.1999); *Roboserve, Inc. v. Kato Kagaku Co.,* 121 F.3d 1027, 1034 (7th Cir.1997). "Judgments are conclusive not only with respect to arguments actually made, but also with respect to arguments that could have been made." *County of Cook,* 167 F.3d at 383. "Once a transaction has caused injury, all claims arising from' that transaction must be brought in one suit or lost." *Roboserve, Inc.,* 121 F.3d at 1035 (citations omitted).

As stated above, Moriarty concedes that the claims he could have brought in *Svec I*—namely, recovery of delinquencies incurred prior to November 13, 1996—are precluded. We concur based on our independent evaluation of the record. The claims presented in this case are virtually identical to those presented in *Svec I;* the primary difference regards the dates upon which Svec allegedly should have contributed.[2] And, of course, Moriarty could have presented claims for contributions arising before November 13, 1996 in *Svec I.*

Thus, the doctrine of claim preclusion bars those claims presented here that Moriarty could have presented in *Svec I.* We grant judgment in favor of Svec on Moriarty's claims for (1) an audit of WSL for the period May 1, 1988 through September 30, 1993; (2) contributions to the

Funds on behalf of WSL employees prior to November 13, 1996;. and (3) contributions to the Funds on behalf of Funeral Home employees prior to November 13, 1996.

## II. Svec's Withdrawal from the FDSA

In *Svec I,* the Seventh Circuit stated that the Funeral Home's obligation to contribute to the Funds on behalf of Svec himself ended in 1995 when the Funeral Home withdrew from the FDSA. We were concerned that this language precluded Moriarty's ability to state a claim in this lawsuit given the res judicata bar of *Svec I,* which was filed after 1995. Therefore, we instructed the parties to submit supplemental briefs addressing this issue. (R. 20, Order of May 5, 1999.) Svec filed a one and a half page memorandum that cites no relevant caselaw and simply mimics our order. Moriarty, on the other hand, filed a real brief, with fully developed legal arguments supported by case law.

Initially, we find that the *Svec I* statement that concerned us resulted from an agreement by the parties: "The Funeral Home withdrew its membership in the FDSA in 1995, and the parties agree that for the purposes of this case, all liability pursuant to the CBAs ceased at that time." 164 F.3d at 326 n. 2. Here, the parties have no similar agreement. Therefore, the Seventh Circuit's statement simply does not apply to this case. This conclusion, however, does not resolve the issue completely: if, as a merits issue, withdrawal from the Association terminated Svec's duty to contribute to the Funds, Moriarty's case is through.

■ Moriarty argues that notice to a multi-employer bargaining association is insufficient to end an employer-member's obligations under a CBA. Instead, the employer-member must notify the union of its

---

**2.** The only other difference is the identities of the employees for whom Svec allegedly should have paid.

withdrawal from the association. Moriarty is right. *See, e.g., Charles D. Bonanno Linen Serv. v. NLRB,* 454 U.S. 404, 410, 102 S.Ct. 720, 70 L.Ed.2d 656 (1982) ("[The NLRB has] announced guidelines for withdrawal from multi-employer units. These rules . . . permit any party to withdraw prior to the date set for negotiations of a new contract or the date on which negotiations actually begin, provided adequate notice is given."); *Trustees of Teamsters Local 727 v. O'Donnell–Bartz–Schultz Funeral Home, Ltd.,* 1995 WL 584056, at *3 (N.D.Ill. Oct.3, 1995) ("Adequate written notice requires that notice be given directly to the union.").[3]

Here, Svec did not notify the Union of his companies' withdrawal from the Association until March 27, 1997. So, at the very least, Moriarty may be able to state a claim for contributions between November 13, 1996 and March 27, 1997. Therefore, Svec has not demonstrated his entitlement to judgment based on his withdrawal from the FDSA, and we deny his summary judgment motion as to that argument. We have no occasion to decide whether Svec's notice to the Union was timely under the CBA and other NLRB rules, or whether—assuming the notice was timely—Svec's obligations under the CBA continued until its expiration on February 28, 1998.

## III. Article I § 7

Finally, Svec argues that CBA Article I § 7 (" § 7") is facially invalid under 29 U.S.C. § 158(e), the National Labor Relation Act's provision outlawing union signatory clauses. Section 7 states, "Pursuant to our Past Practices, the Employer Member agrees to use only livery under contract with Teamster Local 727." Although his argument is not entirely clear, Svec assures us that if § 7 is invalid, then he cannot "be liable for contributions sought for services performed by non-employees." (Summ.J.Mot. at 9.) Moriarty counters

that § 7 does not violate § 158(e) when viewed in context and, in any event, that Svec's failure to raise this defense during *Svec I* precludes our consideration of it now.

■ Initially, we reject Moriarty's preclusion argument out of hand. Although the failure to raise an available defense in an earlier case may preclude presentation of that defense in a subsequent lawsuit, *see, e.g., County of Cook,* 167 F.3d at 385–86, the record before us is simply insufficient to conclusively establish that Svec had a full and fair opportunity to litigate his § 158(e) claim during *Svec I.* Moriarty therefore has not met his burden in precluding this defense argument.

■ Before analyzing the § 158(e) issue, we must comment on the parties' terminology; in particular, their use of "employee" and "non-employee". Svec's use of the phrase "non-employee" appears to include drivers hired by the Funeral Home and/or WSL, but not on a full-time basis; drivers that work on a per-job basis, and not exclusively for the Funeral Home or WSL. Moriarty, on the other hand, uses "employee" to mean drivers paid by the Funeral Home or WSL, regardless of their status as full-time chauffeurs or day trippers. (Resp.Br. at 2 ("The bargaining unit encompassed by the chauffeurs CBAs historically has consisted of those who perform auto livery services on behalf of an employer member, regardless whether the services are performed by a full-time individual or an extra chauffeur on a per trip basis.").)

The CBA supports Moriarty's reading of "employee". Not only does the CBA unqualifiedly define "employee" as "[a]ny member of the Union who is in the employ of an Employer member"—which we read most favorably to Moriarty to mean anyone paid by an employer member—it also has provisions for wages and contributions to the Funds for day trippers. (*See, e.g.,*

---

**3.** *O'Donnell–Bartz–Schultz Funeral Home, Ltd.* involved a dispute over contribution un-  der the same CBA that is at issue here.

CBA Art. VIII (pay scales for "Extra Chauffeurs"); Art. V §§ 1(b) – 1(d) (rate of contribution to Health and Welfare Fund for extra chauffeurs).)

■ The definition of "employee" is pertinent to Svec's argument regarding § 7. Whether a contractual provision limiting an employer's subcontracting choice to union signatories is enforceable under § 158(e) depends on whether the union's motivation stems from primary or secondary objectives. *See National Woodwork Manuf. Assoc. v. NLRB,* 386 U.S. 612, 644–45, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967); *NLRB v. Chauffeurs, Teamsters, Warehousemen & Helpers Local 525,* 773 F.2d 921, 924 (7th Cir.1985). When a union's objective is the preservation of work for its member, a primary objective, then a union signatory clause is enforceable. *National Woodwork,* 386 U.S. at 645, 87 S.Ct. 1250; *Local 525,* 773 F.2d at 924. But when a union's motivation is to "exert improper influence on secondary or neutral parties," the clause is void under § 158(e). *International Union Operating Eng'rs, Local 150 v. NLRB,* 47 F.3d 218, 223 (7th Cir.1995). "The touchstone is whether the agreement . . . is addressed to the labor relations of the contracting employer vis-a-vis his own employees." *National Woodwork,* 386 U.S. at 645, 87 S.Ct. 1250. Thus, whether non-full-time drivers hired by Svec were his "employees" is crucial to the legitimacy of § 7.

In sum, signatory clauses intended to preserve work traditionally done by union members are legitimate and enforceable; while those intended to coerce non-union workers to join the union, or non-union business to use union members, are illegitimate and unenforceable. *National Woodwork,* 386 U.S. at 644, 87 S.Ct. 1250. In general, "[w]hether [a] Union was motivated by a secondary objective is a question of fact, and is to be determined through examination of the totality of the union's conduct in the given situation." *Local 150,*

47 F.3d at 223 (citations and quotation omitted); *see also National Woodwork,* 386 U.S. at 644, 87 S.Ct. 1250.

■ Svec appears to argue that § 7 is invalid because it requires him to hire day trippers who belong to the Union and, because those day trippers are not his "employees", that the purpose of § 7 must therefore be secondary (i.e., to exert influence on neutral third parties—the non-Union day trippers). However, it is clear from the CBA that day trippers are in fact "employees" as the term is used in that document. Additionally, day trippers are members of the bargaining unit, not neutral third parties, and thus the clause appears motivated by the Union's primary objective of preserving work for Union members.

Even if Svec is really arguing that § 7 is invalid as a prohibition against subcontracting livery work to a company that uses non-Union drivers [4]—thereby exerting coercive influence on neutral, non-FDSA livery companies—summary judgment would be inappropriate. A contrary argument could be made that the Union intended, via § 7, to close any loophole allowing employer-members to avoid the CBA's wage and contribution provisions for day trippers by subcontracting that work to non-Union livery companies. Such a purpose, in effect, would also serve the legitimate primary objective of preserving work traditionally performed by Union workers.

Finally, the qualifier "Pursuant to our Past Practice" suggests a facial ambiguity as to the meaning, as well as the Union's motivation, of the clause. Moriarty argues that the Union has never sought literal enforcement of § 7, but rather interprets and applies the clause "as it has historically been practiced: as restricting sub-contracting of bargaining unit work completely." (Resp.Br. at 10.) Again, interpreting the clause in this manner reveals a legitimate purpose: to "restrict[ ] employer

4. Svec does not make this argument, although it is a logical extension of the argument he

appears to present.

members of the multi-employer association [which includes livery services] from using non-employer members for livery service, thus maintaining the work within the scope of the multi-employer bargaining unit." (Resp.Br. at 10.)

As Moriarty concedes, § 7 is inartfully drafted—a shortcoming he assures us has been remedied in subsequent CBAs. In any event, Moriarty has established a genuine issue regarding whether § 7 was calculated to serve the primary purpose of protecting Union members by preserving their jobs with employer-members of the FDSA. Therefore, summary judgment on this issue is denied.

## CONCLUSION

For the reasons stated above, we grant in part and deny in part Svec's motion for partial summary judgment. (R. 7-1.) Res judicata precludes those claims arising prior to November 13, 1996, and we grant judgment in favor of Svec on those claims. A genuine trial issue remains as to Moriarty's claims for contribution to the Funds for chauffeurs and day trippers arising after November 13, 1996, and judgment is denied on those claims.