56 F.3d 273
 149 L.R.R.M. (BNA) 2513, 312 U.S.App.D.C. 309
 DEPARTMENT OF the ARMY, United States Army Commissary, Fort
Benjamin Harrison, Indianapolis, Indiana;
Department of the Army, Finance and
Accounting Office, Fort Sam
Houston, Texas, Petitioners
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent.
American Federation of Government Employees Local # 1411, Intervenor.
 No. 93-1655.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Nov. 18, 1994.
Decided June 9, 1995.
Rehearing and Suggestion for Rehearing
In Banc Denied Aug. 9, 1995.
 
 Petition for Review of a Decision and Order of the Federal Labor Relations Board.
 Matthew M. Collette, Atty., U.S. Dept. of Justice, argued the cause for petitioners. With him on the briefs were Frank W. Hunger, Asst. Atty. Gen., and William G. Kanter, Atty., U.S. Dept. of Justice.
 William E. Persina, Atty., Federal Labor Relations Authority, argued the cause for respondent. With him on the brief was William R. Tobey, Deputy Sol., Federal Labor Relations Authority. Frederick M. Herrera, Arthur A. Horowitz, and David M. Smith, entered appearances for respondent.
 Judith D. Galat and Mark D. Roth, entered appearances for intervenor.
 Before: GINSBURG, HENDERSON, and TATEL, Circuit Judges.
 GINSBURG, Circuit Judge:
 
 
 1
 In response to a direction from the Department of the Army, the Army Finance and Accounting Office (FAO) at Fort Sam Houston increased from 10 to 12 days the lag between pay period and payment for certain Army employees. Because this new policy was not announced in advance to the commissary employees at Fort Benjamin Harrison, a number of them had insufficient funds in their bank accounts to cover the checks they had written. The checks were paid by debiting the overdraft lines of credit attached to their checking accounts, for which they incurred interest charges. The commissary employees' union (American Federation of Government Employees, Local # 1411) filed a complaint with the Federal Labor Relations Authority, which held that the commissary and the FAO committed unfair labor practices by implementing the new pay-lag policy without first providing notice to the Union. The FLRA ordered the FAO, inter alia, to "[r]eimburse unit employees for all monies lost or interest charged as a result" of the policy change.
 
 
 2
 The relevant components of the Department of the Army petition for review of the FLRA's decision, arguing that the sovereign immunity of the United States bars the above-quoted portion of the prescribed remedy. The FLRA cross-applies for enforcement of its order. Because the United States has not clearly waived its immunity from suit for this monetary relief, we grant the petition for review, deny the application for enforcement, and vacate the disputed portion of the order under review.
 
 I. ANALYSIS
 
 3
 The fundamental principle relevant to this case, as all parties agree, is that "[t]he United States, as sovereign, is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 769-70, 85 L.Ed. 1058 (1941). The FLRA argues that the doctrine of sovereign immunity does not apply here for three independent reasons: (A) the petitioners waived immunity through their actions before the FLRA; (B) the United States is on both sides of this case; and (C) in the Federal Service Labor-Management Relations Statute the Congress waived the immunity of the United States to the type of monetary remedy imposed here. We find none of these arguments convincing for the reasons set out below.
 
 A. Waiver
 
 4
 The FLRA makes two waiver arguments. First, the Authority argues that the Army waived its claim to sovereign immunity by appearing before the FLRA to defend its position on the merits. While it is true that the sovereign immunity of a State is waived by appearance in a federal court, see, e.g. Clark v. Barnard, 108 U.S. 436, 447, 2 S.Ct. 878, 882-83, 27 L.Ed. 780 (1883), federal sovereign immunity is not waived by appearance in any forum because "officers of the United States possess no power through their actions to waive an immunity of the United States or to confer jurisdiction on a court in the absence of some express provision of Congress." United States v. N.Y. Rayon Importing Co., 329 U.S. 654, 660, 67 S.Ct. 601, 604, 91 L.Ed. 577 (1947); accord United States v. Mitchell, 463 U.S. 206, 215-16, 103 S.Ct. 2961, 2967-68, 77 L.Ed.2d 580 (1983).
 
 
 5
 The Authority also argues that the Army waived its right to present a sovereign immunity argument to this court by failing to raise it first before the agency. There, the Army made the general argument that the proposed remedy is not authorized by the Statute, but it did not raise the more specific sovereign immunity claim. Although the Statute does provide that except in "extraordinary circumstances" the reviewing court is not to consider an argument that was not raised before the FLRA, 5 U.S.C. Sec. 7123(c), this provision cannot bar a belated claim of sovereign immunity. If it could, then as with a waiver by appearance, a federal official could effectively waive sovereign immunity and confer jurisdiction upon the court without an express authorization from the Congress. See United States v. United States Fidelity and Guaranty Co., 309 U.S. 506, 513, 60 S.Ct. 653, 657, 84 L.Ed. 894 (1940) (rejecting claim that federal government waived sovereign immunity by failing to raise it in district court lest "Government [be subject] to suit in any court in the discretion of its responsible officers [which] is not permissible"). We hold, therefore, that the Army did not waive its sovereign immunity argument by failing to raise it before the Authority.
 
 B. The Government v. The Government
 
 6
 The FLRA next contends that there is no sovereign immunity in "the 'government-against-government' situation" before us because the doctrine of sovereign immunity "was designed for the purpose of protecting the government from litigation initiated by a source outside the government's direct control--its citizens," and not to protect one Government agency from litigation initiated by another. This argument invokes an unduly circumscribed notion of the doctrine of sovereign immunity. Cf. Gray v. Bell, 712 F.2d 490, 511 (D.C.Cir.1983) (setting forth three policy bases of sovereign immunity). Not even the FLRA's account of the doctrine, however, suggests that the sovereign is immune only to lawsuits brought by private parties, and not to a suit such as this, brought by a government official acting for the benefit of private parties. See United States v. Horn, 29 F.3d 754, 761 (1st Cir.1994) (sovereign immunity "stands as an obstacle to virtually all direct assaults against the public fisc, save only those incursions from time to time authorized by Congress"). Hence, the Army enjoys sovereign immunity in this instance unless the Congress has waived it, which is the thrust of the FLRA's final argument.
 
 C. The Statute
 
 7
 The Authority argues that the Congress, in enacting the Statute, waived the Government's immunity to the kind of remedy it ordered in this case. Because the Congress can waive immunity to one type of remedy without waiving immunity to another, see, e.g., United States v. Nordic Village, 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992), it is important, as a threshold matter, to understand the remedy at issue here.
 
 
 8
 The Authority ordered the Army to compensate its employees for "all monies lost or interest charged as a result" of the change in the Army's pay-lag policy. This is properly understood as "money damages," a legal rather than an equitable remedy. Bowen v. Massachusetts, 487 U.S. 879, 893, 895, 108 S.Ct. 2722, 2731-32, 2732-33, 101 L.Ed.2d 749 (1988) ("money damages" "refers to a sum of money used as compensatory relief ... given to the plaintiff as a substitute for a suffered loss" in an action at law for damages) (quoting Maryland Dept. of Human Resources v. Department of Health and Human Services, 763 F.2d 1441, 1446 (D.C.Cir.1985) (emphasis in original)). Money damages are the "classic remedy" for consequential losses. Hubbard v. EPA, 982 F.2d 531, 533 (D.C.Cir.1992) (in banc ). The remedy in an equitable action for specific relief, on the other hand, does not attempt to provide the injured party with a substitute for a consequential loss, but rather "attempt[s] to give the plaintiff the very thing to which he was entitled." Bowen, 487 U.S. at 895, 108 S.Ct. at 2732; Hubbard, 982 F.2d at 533 (both quoting D. DOBBS, Handbook on the Law of Remedies 135 (1973)). Thus, a monetary award can be either legal or equitable in nature, depending upon whether the money is a substitute for something lost in consequence of the defendant's act or is "the very thing to which [the plaintiff] is entitled." Maryland Dept. of Human Resources, 763 F.2d at 1446.
 
 
 9
 In this case, proper notice of the pay-lag policy change was the thing to which the commissary employees were entitled. The interest charges for which the employees seek compensation are sums they lost only as a consequence of the Army's failure to give them the notice they were due. Accordingly, any compensation for such interest is properly characterized as "money damages." Hence, the question before the court is whether the Statute waives the immunity of the United States to liability for money damages.
 
 
 10
 The section of the Statute that sets out the powers and duties of the FLRA provides that the Authority "may require an agency or a labor organization to cease and desist from violations of this chapter and require it to take any remedial action it considers appropriate to carry out the policies of this chapter." 5 U.S.C. Sec. 7105(g)(3). The section that addresses the prevention of unfair labor practices further provides that if the Authority finds that an agency or a labor organization has committed an unfair labor practice it shall issue an order:
 
 
 11
 (A) to cease and desist ...;
 
 
 12
 (B) requiring the parties to renegotiate a collective bargaining agreement in accordance with the order ...;
 
 
 13
 (C) requiring reinstatement of an employee with backpay ...; or
 
 
 14
 (D) including any combination of the actions described in subparagraphs (A) through (C) of this paragraph or such other action as will carry out the purpose of this chapter.
 
 
 15
 5 U.S.C. Sec. 7118(a)(7). The FLRA argues that by enacting these two provisions the Congress waived the Government's immunity to money damages.
 
 
 16
 The two provisions, and particularly the phrases "any remedial action" and "such other action" in Secs. 7105(g)(3) and 7118(a)(7)(D) respectively, do seem to provide the FLRA with a broad range of remedial powers. Indeed, as the FLRA correctly notes, we have more than once said that they "exude indications of a broad congressional delegation of discretion to the FLRA to fashion appropriate remedies for an unfair labor practice." FDIC v. FLRA, 977 F.2d 1493, 1498 (D.C.Cir.1992) (quoting National Treasury Employees Union v. FLRA, 910 F.2d 964, 967 (D.C.Cir.1990) (in banc )); accord American Federation of Gov't Employees, SSA Council 220 v. FLRA, 840 F.2d 925, 928 (D.C.Cir.1988) (hereinafter SSA Council 220 ). The issue before us, however, is not the breadth but the clarity of those provisions.
 
 
 17
 In order to waive sovereign immunity, the Congress must "unequivocally express[ ]" its desire to do so. Irwin v. Veterans Affairs, 498 U.S. 89, 95, 111 S.Ct. 453, 457, 112 L.Ed.2d 435 (1990). This expression must appear on the face of the statute; it cannot be discerned in (lest it be concocted out of) legislative history. Nordic Village, 503 U.S. at 37, 112 S.Ct. at 1016. The Government's consent to a particular remedy must be unambiguous as well, id. at 34-36, 112 S.Ct. at 1014-16, and, in determining the scope of a partial waiver, "the Government's consent must be construed strictly in favor of the sovereign and not enlarged beyond what the language requires." Id. at 34, 112 S.Ct. at 1015; accord Ardestani v. INS, 502 U.S. 129, 137, 112 S.Ct. at 515, 520-21, 116 L.Ed.2d 496 (1991). For the FLRA to prevail in this case, therefore, the statutory waiver provision must unambiguously establish that it extends to the award of money damages. See Dorsey v. Department of Labor, 41 F.3d 1551 (D.C.Cir.1994); cf. Nordic Village, 503 U.S. at 34, 112 S.Ct. at 1014-15. An Act of Congress is not unambiguous, and thus does not waive immunity, if it will bear any "plausible" alternative interpretation. See Nordic Village, 503 U.S. at 34, 112 S.Ct. at 1014-15.
 
 
 18
 So now the question is whether the phrases "such other action" and "any remedial action" necessarily constitute an express and unambiguous waiver of sovereign immunity to an award of money damages. The answer is clearly negative; the term "action" is simply not clear or specific enough to support such a waiver. While the Congress might have intended "action" to have its broadest possible meaning, so that literally any remedy including money damages could be imposed by the FLRA, it is also plausible that the Congress intended to give the FLRA the power to impose only equitable remedies, which normally require the offending agency to take some "action." Indeed, the latter interpretation gains support by contrast with statutes in which the Congress has unequivocally expressed its desire to waive sovereign immunity to money damages. See 5 U.S.C. Sec. 1214(g) (providing specific authority for Merit Systems Protection Board to award "reimbursement for attorney's fees, back pay and related benefits, medical costs incurred, travel expenses, and any other reasonable and foreseeable consequential damages"); see also 42 U.S.C. Sec. 1981a(a)(1) ("complaining party [in a civil rights case] may recover compensatory and punitive damages").
 
 
 19
 Both sides agree that Sec. 10(c), the remedial provision of the National Labor Relations Act, 29 U.S.C. Sec. 160(c), is "strikingly similar" to the provisions at issue here. Section 10(c) provides that upon finding an unfair labor practice, the NLRB shall order the violator "to cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of [the Act]...." Two circuits have squarely held that this provision does not authorize the NLRB to award compensatory money damages. Walker v. Ford Motor Co., 684 F.2d 1355, 1364 (11th Cir.1982); Harrington v. Vandalia-Butler Board of Education, 585 F.2d 192, 196-97 (6th Cir.1978) (in banc ); see also Protos v. Volkswagen of America, 797 F.2d 129, 138 (3rd Cir.1986); Musikiwamba v. ESSI, Inc., 760 F.2d 740, 748 (7th Cir.1985). As the FLRA correctly notes, the NLRB has nonetheless continued to order the payment of compensatory money damages in some cases. See, e.g., BRC Injected Rubber Products, Inc., 311 N.L.R.B. 66, 1993 WL 169671 (1993). Of course, the correct interpretation of Sec. 10(c) is not before this court today and we offer no opinion on the issue. We do think, however, that the split in authority reflects the ambiguity of the term "action." If the scope of that term is so unclear that the courts and the Board cannot agree upon its meaning in that "strikingly similar" context, then it is difficult to see how it could be sufficiently unambiguous to effect a waiver of sovereign immunity for money damages here.
 
 
 20
 The FLRA also invokes Loeffler v. Frank, 486 U.S. 549, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988), suggesting that the Supreme Court there found a waiver of sovereign immunity from payment of prejudgment interest in Title VII suits upon the basis of a statute that merely authorized the court to "order such affirmative action as may be appropriate, ... including back pay ..., or any other equitable relief as the court deems appropriate." 42 U.S.C. Sec. 2000e-5(g) (1988). This claim is extremely misleading. The Court in Loeffler did not hold that the Congress waived sovereign immunity upon the basis of the just-quoted remedial provision. Rather, the Court held that the Congress waived the Postal Service's immunity to prejudgment interest when it passed the "sue-and-be-sued" provision of the Postal Reorganization Act. 486 U.S. at 554-58, 108 S.Ct. at 1968-71. The Court noted that such clauses are deemed to waive immunity because they bespeak the intent of the Congress to treat a governmental entity engaged in a commercial activity as though it were a private actor. Id. at 556, 108 S.Ct. at 1969-70. (Subsequently the Court explained that the sue-and-be-sued clause is a specific exception to the general rule that a waiver of sovereign immunity must be construed strictly in favor of the sovereign. Nordic Village, 503 U.S. at 34, 112 S.Ct. at 1014-15.) The Court specifically stated that there was no provision in Title VII itself sufficiently express and unambiguous to waive sovereign immunity from liability for prejudgment interest. Id. at 565, 108 S.Ct. at 1974-75. In truth, therefore, Loeffler supports the conclusion that the Statute (like Title VII before it was amended in 1991) is not necessarily a waiver of sovereign immunity for all seasons, but rather a waiver of at best uncertain reach.
 
 
 21
 The FLRA also offers a contextual argument to support its interpretation of the Statute, in the hope that context can supply the "unequivocal expression" lacking in the text. The Authority claims that because Sec. 7118(a)(7) authorizes it to award back pay, which is at least sometimes a form of money damages, see Hubbard, 982 F.2d at 533 & n. 4, the phrase "other action" denotes other forms of money damages in addition to back pay. As the Army notes, however, the Statute directly ties the back pay remedy to an award of reinstatement. Because all three specifically enumerated remedies--a cease and desist order, a bargaining order, and an order of reinstatement--are equitable, the Army argues that "other action[s]" means only other equitable actions. Both interpretations certainly are plausible, but neither is compelling. Consequently, the statutory context does not cure the facial ambiguity of the text, i.e. of the term "action."
 
 
 22
 Finally, the FLRA suggests that because we have in prior decisions "recognized that the Statute allows the Authority to fashion make-whole money remedies other than back pay," we must read the Statute now to waive the Government's immunity to the damage remedy at issue here. In particular, the FLRA points to our statement in SSA Council 220, 840 F.2d at 930, that there is "a weighty preference in favor of a direct grant of individualized 'make whole' relief--especially in the form of a monetary award--for losses actually suffered by employees." The make whole monetary award at issue in that case, however, was "back pay or other individualized equitable relief." Id. The case has no bearing, therefore, upon the question whether the legal remedy of money damages other than back pay is available under the Statute. The same is true of American Federation of Government Employees v. FLRA, 785 F.2d 333, 337 (D.C.Cir.1986), where we suggested in a dictum that the FLRA should "typically grant monetary relief, such as backpay, in addition to any order to bargain." Because the only monetary relief at issue in that case was back pay itself, the statement concerning "monetary relief" is ambiguous. It might refer broadly to consequential money damages or narrowly to equitable specific relief; in either event, it remains a dictum. A decision that the Congress waived the Government's sovereign immunity to money damages in the Statute, therefore, is not to be founded upon the prior decisions of this court.
 
 II. CONCLUSION
 
 23
 For the foregoing reasons, we grant the petition for review, deny the application for enforcement, and vacate the order of the FLRA insofar as it requires the Army to reimburse unit employees for all monies they lost or interest they were charged as a result of the change in the pay-lag policy.
 
 
 24
 So ordered.