29 A.3d 1103

MINDY JACOBSON, INDIVIDUALLY AND ON BEHALF OF S.J., A MINOR CHILD, PLAINTIFFS–RESPONDENTS, v. UNITED STATES OF AMERICA, DEFENDANT–APPELLANT, AND ESTATE OF STEVEN TETZ AND DAWN HOUCK, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued September 19, 2011—Decided October 18, 2011.

562

Before Judges PARRILLO, GRALL and SKILLMAN.

*Michael E. Robinson* (United States Department of Justice) of the District of Columbia bar, admitted pro hac vice, argued the

cause for appellant (*Paul J. Fishman*, United States Attorney, and *Mr. Robinson*, attorneys; *Vernon Norwood*, Special Assistant United States Attorney, and *Mr. Robinson*, on the brief).

*Carl G. Archer* argued the cause for respondents (*Maselli Warren, P.C.*, attorneys; *Paul J. Maselli*, on the brief).

The opinion of the court was delivered by

PARRILLO, P.J.A.D.

At issue is whether the United States enjoys sovereign immunity from liability for damages arising from the Social Security Administration's (SSA) failure to withhold disability benefits payments pursuant to a proper child support garnishment order. The Law Division granted summary judgment in favor of plaintiff Mindy Jacobson, who sued individually and on behalf of her daughter, S.J., for whom child support was awarded, ordering the federal government to pay them compensatory damages, prejudgment interest, and counsel fees and costs. We reverse and hold that plaintiff's claim is barred by sovereign immunity under 42 *U.S.C.A.* § 659.

The essential facts are not in dispute. On December 18, 1998, the Family Part ordered Steven Tetz to pay child support to plaintiff for the benefit of their minor daughter, S.J. That order, in turn, was enforced by an income withholding order entered against Tetz, which the New Jersey Department of Human Services, Office of Child Support (OCS), served upon him in August 2004. On August 10, 2004, the OCS also mailed a notice of the income garnishment order to the SSA pursuant to *N.J.S.A.* 2A:17–56.9 and *Rule* 5:7–5, although the SSA has no record of the receipt.

Tetz fell behind on his child support payments. He died on March 13, 2008, in arrears on his child support payments in the amount of $79,546. Several months before, on December 17, 2007, the SSA had paid Tetz a retroactive award of Social Security

disability benefits totaling $58,947.60, and did not garnish any of this award to satisfy child support arrears.

Consequently, plaintiff brought an action in federal district court against Tetz's estate[1] and the United States of America (Government) to enforce the garnishment order entered in state court, alleging that, under 42 *U.S.C.A.* § 666(b)(6)(C),[2] the Government, through the SSA, failed to comply with the garnishment order and is liable for the amount of money that should have been withheld to satisfy Tetz's child support arrears. The Government moved to dismiss plaintiff's complaint, asserting principally that 42 *U.S.C.A.* § 659—the provision of federal law subjecting disability benefits received under Title II of the Social Security Act to state "withholding" requirements—does not waive the Government's sovereign immunity from a damages action. The district court dismissed plaintiff's complaint, concluding that section 659 "neither provides [such] a cause of action, nor extends the jurisdiction of federal courts." The dismissal, however, was without prejudice to reinstatement of the action in state court.

As a result, plaintiff, individually and on behalf of S.J., brought this action in the Law Division, once again seeking damages as a result of the SSA's failure to comply with the Family Part's garnishment order to withhold money from Tetz's disability benefits payments. Although not referenced in her complaint, plaintiff's theory of liability was predicated on *N.J.S.A.* 2A:17–56.11, which provides that a "payor" who fails to "withhold wages in accordance with the provisions of the [garnishment] notice" shall be liable for "any amount up to the accumulated amount the payor

---

[1] After various administrative expenses were paid, the Probate Part distributed the remaining balance of Tetz's estate—$25,053.55—in trust for the minor child.

[2] 42 *U.S.C.A.* § 666(b)(6)(C) provides:

The employer must be held liable to the State for any amount which such employer fails to withhold from income due an employee following receipt by such employer of proper notice under subparagraph (A), but such employer shall not be required to vary the normal pay and disbursement cycles in order to comply with this paragraph.

should have withheld from the obligor's income...." The Government answered, but did not assert a sovereign immunity defense to the damages claim, relying instead on its asserted lack of notice of the garnishment order.

Following cross-motions for summary judgment, the Law Division found that the SSA was not protected by sovereign immunity,[3] and had received proper notice of the garnishment order. As to the latter, the court reasoned that under the "mailbox rule," proof that the order was sent by regular mail creates a rebuttable presumption of receipt that was not adequately refuted by the Government in this instance and that superseded any competing presumption of non-receipt based on the "presumption of regularity" doctrine, which presumes that public officers have properly discharged their official duties. Finding no genuine issue of material fact, the court held the Government liable for the SSA's failure to withhold Tetz's benefits pursuant to the garnishment order.

After the court's liability determination, plaintiff moved for summary judgment, including compensatory, pre-judgment interest, and attorney's fees and costs, which the Government opposed. Following argument, the court awarded plaintiff compensatory damages of $43,894.05; pre-judgment interest of $6,515.94 pursuant to N.J.S.A. 2A:17–56.11 and Rule 4:42–11(a)(iii); and attor-

---

[3] Although not raised by the Government at the time, the judge nevertheless briefly addressed the issue:

> As a threshold matter, this Court must briefly consider the issue of sovereign immunity. [Plaintiff], in anticipation of Social Security's potential oppositional argument[,] asserts that pursuant to 42 U.S.C. [§] 659 and both its plain language and legislative history, Social Security is not protected from litigation by sovereign immunity in situations involving the garnishment of child support. [Plaintiff] provides compelling argument supported by legal precedent that is either binding or persuasive. Social Security does not dispute, even in passing, [plaintiff's] arguments regarding the inapplicability of sovereign immunity. Therefore, Social Security is not protected by sovereign immunity.

ney's fees of $66,050.75, together with costs of $2,557.61, under the Equal Access to Justice Act (EAJA), 28 *U.S.C.A.* § 2412(b).

On appeal, the Government primarily argues that plaintiff's claim under *N.J.S.A.* 2A:17–56.11 is barred by sovereign immunity, as Congress did not expressly allow for liability for monetary damages where a federal agency fails to withhold benefits in accordance with a state garnishment order. Because this issue was not raised below, plaintiff argues we should not consider it now. We disagree. While we generally decline to resolve questions or issues not properly presented in the trial court, an exception is made where "the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest." *Nieder v. Royal Indem. Ins. Co.*, 62 *N.J.* 229, 234, 300 *A.*2d 142 (1973). Here, the question of the Government's sovereign immunity clearly and plainly goes to the jurisdiction of the trial court. *See, e.g., United States v. Mitchell*, 445 *U.S.* 535, 538, 100 *S.Ct.* 1349, 1351, 63 *L.Ed.*2d 607, 613 (1980) ("[T]he terms of [Congress's] consent to be sued in any court define that court's jurisdiction to entertain the suit."); *Dep't of Army v. Fed. Labor Relations Auth.*, 56 *F.*3d 273, 275 (D.C.Cir.1995) (holding that the general proscription against considering issues for the first time on appeal "cannot bar a belated claim of sovereign immunity"; otherwise "a federal official could effectively waive sovereign immunity and confer jurisdiction upon the court without an express authorization from the Congress."). Accordingly, we consider the claim of sovereign immunity even though raised for the first time on appeal and, for the following reasons, conclude that it precludes plaintiff's claim against the Government.

Garnishment is a legal proceeding brought by a creditor (garnishor) against a third party (garnishee) to obtain the debtor's property held by the garnishee, thereby satisfying the debt owed to the garnishor. *Harris v. Balk*, 198 *U.S.* 215, 226, 25 *S.Ct.* 625, 628, 49 *L.Ed.* 1023, 1028 (1905). Garnishment is purely a creature of state law. *Id.* at 222, 25 *S.Ct.* at 626, 49 *L.Ed.* at 1026. In New Jersey, a parent who obtains a child support order against the

child's other parent is entitled to enforcement of the order by way of an income withholding or garnishment order as to any income owed the supporting parent. *N.J.S.A.* 2A:17–56.8. If the person or entity required to pay the supporting parent, defined in the statute as the "payor," fails to withhold payment, the payor is liable directly to the supporting parent for the amount that should have been withheld. *N.J.S.A.* 2A:17–56.11. Thus, since the SSA was a "payor" within the meaning of *N.J.S.A.* 2A:17–56.11, and relying on 42 *U.S.C.A.* § 659, which makes Social Security disability benefits subject to garnishment for the enforcement of a legal obligation to pay child support, plaintiff instituted the instant action seeking to hold the Government liable for the amount it failed to withhold.

It is well-settled, however, that the federal government, as sovereign, is immune from suit in state courts absent the consent of Congress, *Block v. North Dakota*, 461 *U.S.* 273, 287, 103 *S.Ct.* 1811, 1819–20, 75 *L.Ed.*2d 840, 853 (1983), "and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Mitchell, supra*, 445 *U.S.* at 538, 100 *S.Ct.* at 1351, 63 *L.Ed.*2d at 613. This shield of sovereign immunity extends to the federal agencies. *FDIC v. Meyer*, 510 *U.S.* 471, 475, 114 *S.Ct.* 996, 1000, 127 *L.Ed.*2d 308, 316 (1994).

Any waiver of sovereign immunity must be expressed unequivocally by Congress and cannot be implied. *Mitchell, supra*, 445 *U.S.* at 538, 100 *S.Ct.* at 1351, 63 *L.Ed.*2d at 613. Further, waivers of sovereign immunity must be strictly construed in favor of the sovereign and may not be enlarged beyond the explicit language of the statute. *Ruckelshaus v. Sierra Club*, 463 *U.S.* 680, 685–86, 103 *S.Ct.* 3274, 3278, 77 *L.Ed.*2d 938, 944 (1983); *see also United States v. N.Y. Rayon Importing Co.*, 329 *U.S.* 654, 659, 67 *S.Ct.* 601, 604, 91 *L.Ed.* 577, 582 (1947) ("[T]here can be no consent by implication or by use of ambiguous language.... The consent necessary to waive the traditional immunity must be express, and it must be strictly construed."). So measured, we conclude that 42 *U.S.C.* § 659, while allowing enforcement of

garnishment orders issued by state courts, does not expressly waive the Government's sovereign immunity from damages liability for its failure to comply therewith.

In 1974, Congress enacted the Child Support Enforcement Act, 42 *U.S.C.A.* § 659, that waived the Government's sovereign immunity against garnishment proceedings for enforcement of state court-ordered child support and alimony. See *United States v. Morton,* 467 *U.S.* 822, 826–27, 104 *S.Ct.* 2769, 2772, 81 *L.Ed.*2d 680, 687 (1984). Section 659 addressed concerns that recipients of federal benefits "were evading support obligations and thereby throwing children and divorced spouses on the public dole. . . ." *Hisquierdo v. Hisquierdo,* 439 *U.S.* 572, 576, 99 *S.Ct.* 802, 805, 59 *L.Ed.*2d 1, 7 (1979). At the time, federal employees' income had not been subject to attachment for purposes of enforcing support orders because of a finding by the courts that such attachment triggered the sovereign immunity of the United States. *Morrison v. Morrison,* 408 *F.Supp.* 315, 317 (N.D.Tex.1976). "The solution was to enact a statute that would waive such immunity; indeed, this waiver is the purpose and the effect of section 659." *Ibid. See also Morton, supra,* 467 *U.S.* at 833, 104 *S.Ct.* at 2775, 81 *L.Ed.*2d at 691 ("[Section 659] was enacted to remedy the plight of persons left destitute because they had no speedy and efficacious means of ensuring that their child support and alimony would be paid."). Accordingly, while the provision does not confer jurisdiction upon the federal courts to entertain such actions, it removes the Government's immunity from a garnishment proceeding authorized under state law. *Morrison, supra,* 408 *F.Supp.* at 317; *see also Stephens v. U.S. Dep't of Navy,* 589 *F.*2d 783, 783 (4th Cir.1979) (holding that 42 *U.S.C.* § 659 "merely waives the defense of sovereign immunity to state proceedings, while not creating a federal cause of action").

Thus, section 659 provides in pertinent part:

(a) Consent to support enforcement

Notwithstanding any other provision of law . . . moneys (the entitlement to which is based upon remuneration for employment) due from, or payable by, the United States . . . (including any agency . . . thereof) to any individual . . . shall be subject,

in like manner and to the same extent as if the United States ... were a private person, to withholding in accordance with State law enacted pursuant to section 666 of this title [governing child support enforcement] ... and to any other legal process brought by an individual obligee, to enforce the legal obligation of the individual to provide child support or alimony.

[42 *U.S.C.A.* § 659(a).] [4]

Under section 659, moneys payable to an individual that are considered to be "based upon renumeration for employment" include Social Security disability benefits such as those at issue in the case at bar. 42 *U.S.C.A.* § 659(h)(1)(A)(ii)(I). *See DeTienne v. DeTienne,* 815 *F.Supp.* 394, 396–97 (D.Kan.1993) (explaining how section 659 reaches Social Security Title II disability benefits that would otherwise have been exempt from execution under section 207 of the Social Security Act, 42 *U.S.C.A.* § 407). "Legal process" is defined as "any writ, order, summons, or other similar process in the nature of garnishment" that is issued by a court "of competent jurisdiction in any State" and compels a "governmental entity which holds moneys which are otherwise payable to an individual to make a payment from the moneys to another party in order to satisfy a legal obligation of the individual to provide child support or make alimony payments." 42 *U.S.C.A.* § 659(i)(5).[5] While the plain language of section 659(a) expressly subjects the Government to state "withholding" requirements for certain federal payments, and to legal process brought to enforce the legal obligation of an individual to provide child support, nothing in the

---

4 In 1977, Congress added subparagraph (f) to § 659, which relieves the government of liability for compliance with the statute. It provides:

> (1) Neither the United States ... nor any disbursing officer shall be liable with respect to any payment made from moneys due or payable from the United States to any individual pursuant to legal process regular on its face, if the payment is made in accordance with this section and the regulations issued to carry out this section.

[42 *U.S.C.A.* § 659(f)(1).]

5 Of note, "[t]he fact that section 659(a) is applicable to particular moneys does not necessarily mean that those moneys will be subject to legal process. It means that the question of whether such moneys will be subject to legal process is to be determined in accordance with state law in like manner as if the United States were a private person." *DeTienne, supra,* 815 *F.Supp.* at 397.

statute creates a right of action for damages for failure to comply with a state child support garnishment order.

Congress also authorized the promulgation of regulations to implement the provisions of section 659. *See* 42 *U.S.C.A.* § 661(a); *see also Morton, supra,* 467 *U.S.* at 834, 104 *S.Ct.* at 2776, 81 *L.Ed.*2d at 691. The implementing regulations, promulgated by the Office of Personnel Management (OPM) pursuant to 42 *U.S.C.A.* § 659(g), squarely address the question presented on this appeal, namely whether Congress waived immunity to the extent that a court may hold a federal entity liable for the same type of monetary awards that state law authorizes against a private employer when the entity fails to comply with a garnishment order.

The relevant regulation—5 *C.F.R.* § 581.305, titled "Honoring legal process"—was first promulgated in 1980. At that time, the regulation waived sovereign immunity and imposed liability for money damages on the United States for negligently failing to comply with a garnishment order. Specifically, the regulation stated:

> (d) Neither the United States, any disbursing officer, nor governmental entity shall be liable for any payment made from moneys due from, or payable by, the United States to any individual pursuant to legal process regular on its face, if such payment is made in accordance with this part. However, *where a governmental entity negligently fails to comply with legal process, the United States shall be liable for the amount that the governmental entity would have paid, if the legal process had been properly honored.*
>
> [5 *C.F.R.* § 581.305(d) (1981) (emphasis added).]

While not expressly referencing 5 *C.F.R.* § 581.305(d) as the guiding authority for so acting, at least three federal courts have imposed liability on the United States for the funds it failed to withhold pursuant to proper support garnishment orders. *See Loftin v. Rush,* 767 *F.*2d 800, 808–09 (11th Cir.1985); *DeTienne, supra,* 815 *F.Supp.* at 398; *Young v. Young,* 547 *F.Supp.* 1, 5 (W.D.Tenn.1980). Significantly, however, these cases were all decided before the implementing regulation, 5 *C.F.R.* § 581.305, was amended in 1998 to specifically preclude damages liability.

To that end, on June 11, 1997, the OPM proposed to amend the child support garnishment regulations to clarify that, while the federal government's sovereign immunity is waived to allow for processing garnishment orders, this waiver is necessarily limited and does not extend to damages liability for failure to comply with legal process. 62 *Fed.Reg.* 31763 (June 11, 1997). The supplementary information to the OPM's proposal stated:

OPM also propose[s], in accordance with a request from the Justice Department, to amend section 581.305(e) to state the Government's similar absence of liability in the context of improperly effectuated support garnishment orders. It is the Federal Government's position that the support garnishment statute [42 *U.S.C.* § 659] did not waive sovereign immunity in a manner that would make the Federal Government liable for damages as a result of failure to comply with legal process. *This amendment to the support garnishment regulations alters regulatory language that has been in effect since 1980. The current regulatory language is incorrect as a matter of law.* This amendment is in accordance with several important judicial decisions concerning sovereign immunity, including the decision recently announced by the United States Court of Appeals for the District of Columbia Circuit in *Department of the Army v. Federal Labor Relations Authority,* 56 *F.*3d 273 (1995).

[62 *Fed.Reg.* 31763 (June 11, 1997).]

Accordingly, 5 *C.F.R.* § 581.305 was amended to expressly provide that section 659 does not impose damages liability on the United States: [6]

Neither the United States, any disbursing officer, nor any governmental entity shall be liable under this part to pay money damages for failure to comply with legal process.

[5 *C.F.R.* § 581.305(e)(2).]

 Nevertheless, plaintiff argues that the amended regulation plainly contravenes section 659 and, as such, is ultra vires and unenforceable. We disagree. Congress explicitly delegated authority to construe section 659 by regulation. 42 *U.S.C.A.* 659(g). Authority to promulgate such regulations, insofar as the section applies to moneys from the United States, is vested in the President or his designee. 42 *U.S.C.A.* § 659(g)(1). The President, by executive order, delegated authority to the OPM to

---

[6] We have uncovered no published authority since then applying the amended regulation.

disseminate implementing regulations. Exec. Order No. 12,105, 43 *Fed.Reg.* 59,465 (1973), *as amended by* Exec. Order No. 17107, 44 *Fed.Reg.* 1,055 (1979). In accordance with this delegation of authority, the OPM promulgated regulations for processing child support orders. 5 *C.F.R.* Ch. 1 (1–1–96 Ed.). As the Supreme Court declared when interpreting section 659 in *Morton, supra,* "[b]ecause Congress explicitly delegated authority to construe [section 659] by regulation, in this case we must give the regulations legislative and hence controlling weight unless they are arbitrary, capricious, or plainly contrary to the statute." 467 *U.S.* at 834, 104 *S.Ct.* at 2776, 81 *L.Ed.*2d at 691. As noted, the OPM rejected its previous interpretation of § 659(a), authorizing damages liability on the United States, as "incorrect as a matter of law" and in 1998 amended 5 *C.F.R.* § 581.305(e)(2) to retain sovereign immunity against claims of liability for failure to comply with legal process. That Congress has not since amended § 659 to correct the OPM's interpretation only reinforces the conclusion that the 1998 amendment to 5 *C.F.R.* § 581.305 is consistent with and advances congressional intent. *Dep't of Children & Families, Div. of Youth & Family Servs. v. T.B.,* 207 *N.J.* 294, 307, 24 *A.*3d 290 (2011); *State v. Chapland,* 187 *N.J.* 275, 291, 901 *A.*2d 351 (2006).

Such an intent is clearly evidenced in the plain language of section 659 itself, which effects only a partial waiver of sovereign immunity, limited to permitting state courts to order federal agencies to withhold money from the pay or benefits checks of their employees or beneficiaries for the purpose of effectuating court-ordered alimony and child support payments. *See Rose v. Rose,* 481 *U.S.* 619, 635, 107 *S.Ct.* 2029, 2038, 95 *L.Ed.*2d 599, 613 (1987) ("[Section 659(a) ] was intended to create a limited waiver of sovereign immunity so that state courts could issue valid orders directed against agencies of the United States Government attaching funds in the possession of those agencies. . . ."). There is nothing in the statutory provision to suggest, much less unequivocally state, that the scope of the waiver is sufficiently broad to encompass a cause of action against the Government for money

damages, as plaintiff advocates here. Rather, section 659(a) simply authorizes federal agencies to honor state court garnishment orders providing for payment of child support and alimony. As the Eight Circuit in *Overman v. United States*, 563 *F*.2d 1287, 1291 (8th Cir.1977), stated:

> The statute [42 *U.S.C.* § 659] simply removed the bar of sovereign immunity to one narrow class of actions: enforcement of garnishment writs issued by state courts. Nothing in the statute or legislative history, however, indicates any congressional intent to expose the Government to wider liability. The language of § 659 waives Government immunity only from legal process "brought for the enforcement . . . of [the] legal obligations to provide child support or make alimony payments." The statute patently does not waive governmental immunity to other kinds of lawsuits. . . .

In other words, section 659 merely requires the Government to be treated the same as a private employer in receipt of a garnishment order. "Under § 659, the United States must respond to the garnishment to the same extent as a private person for similar legal process and only to that extent." *Id.* at 1292.

In sum, we hold that the defense of sovereign immunity applies and operates to bar plaintiff's action against the Government for money damages. Plaintiff's complaint having stated no cause of action cognizable within the bounds authorized by section 659, the motion judge erred in granting judgment in her favor and denying summary relief to the Government. Accordingly, the judgment awarding compensatory damages, pre-judgment interest, and attorney's fees and costs is vacated and the matter is remanded to the Law Division for entry of an order dismissing plaintiff's complaint with prejudice.

In light of this disposition, we need not resolve the Government's alternative claim that the motion court erred in applying New Jersey's "mailbox rule" to find that the SSA had received the garnishment order.

Reversed.